UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 91-7225
_____

AARON SPANN,

Plaintiff-Appellant,

VERSUS

POLICE OFFICER A. G. RAINEY, ET AL.,

Defendants-Appellees.

_____

No. 92-7290
_____

AARON SPANN,

Plaintiff-Appellee,

VERSUS

A. G. RAINEY, Police Officer, ET AL.,

Defendants,

A. G. RAINEY, Police Officer,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
(CA-J88-0616-B)
_____

Before DUHÉ and BARKSDALE, Circuit Judges, and TRIMBLE,[1] District
Judge.

BARKSDALE, Circuit Judge:

_____

[1] District Judge of the Western District of Louisiana, sitting by
designation.

Primarily at issue is an interlocutory appeal from the denial of qualified immunity, the appeal being from a ruling on a summary judgment motion filed after a new trial was granted; one issue being whether the appeal can even be taken. These consolidated appeals concern Aaron Spann's excessive force and other claims against the City of Jackson, Mississippi, its police department, and three police officers. We **DISMISS** Spann's appeal, No. 91-7225, and cross-appeal in No. 92-7290, because there was no timely notice of appeal from a final judgment. Because he is appealing from an order denying qualified immunity, we have jurisdiction in Officer A. G. Rainey's interlocutory appeal, No. 92-7290, but **AFFIRM** the denial of summary judgment.

## I.

For several years prior to November 1987, Dr. Campbell had treated Spann for a diabetic condition. On November 19, after having missed a scheduled appointment that October, he arrived at Dr. Campbell's office.[2] Dr. Campbell testified that she encountered Spann in the office, that he was angry, that she asked him to wait in the reception area, and that she then told the receptionist to call the police. A "disturbance call" was placed to the police; and when Officers Kendrick and Rainey arrived, they were directed to Spann, whom they approached and asked for identification. When he did not respond, Rainey grabbed Spann's arm; and Spann lunged forward, grabbing Officer Kendrick in the

---

[2] Spann testified at trial that he had an appointment; Campbell, that he didn't.

- 2 -

neck/collarbone area. A "split second" later, Rainey hit Spann over the head with his flashlight, knocking him down. When Spann attempted to get up, Rainey knocked him down again with his flashlight. A third officer, Williams, arrived as Rainey and Kendrick were attempting to handcuff Spann. Williams testified that Spann was then bleeding from his head. Spann testified that he was kicked, stomped, beaten, handcuffed, and dragged down stairs before he was placed in a police car and taken to the hospital.

Medical examination revealed that Spann had been suffering from hypoglycemia (low blood sugar) at the time he was first approached by Rainey and Kendrick. It is apparently uncontested that Spann was in a "diabetic coma" at that time, and that this explains his erratic behavior.[3] The only charge filed against him was resisting arrest.

Spann filed a civil rights suit, 42 U.S.C. § 1983, against the City of Jackson, the police department, and the three officers. In their answers to the complaint, the officers, *inter alia*, asserted qualified immunity; but, before trial in 1991, they never moved for dismissal on that basis.

In early October 1991 (1991 trial), at the close of Spann's case in chief, the court dismissed all claims against the City and the department. And, at the close of all the evidence, it directed a verdict for Rainey on the wrongful arrest claim. An excessive

---

[3]     In his statement of uncontested facts filed with his summary judgment motion pursuant to local rule, Rainey stated: "At the time of his arrest the plaintiff, Aaron Spann who is diabetic, was suffering from a low blood sugar level which caused him to act incoherently."

force claim and two pendent state law claims (assault and battery) went to the jury. (The first state claim was that Spann was hit in the head with a flashlight; the second, that he was kicked and beaten once handcuffed.) On October 3, the jury found against Spann on all claims.

Upon the jury being excused, Spann moved orally for judgment notwithstanding the verdict or, in the alternative, a new trial. By an immediate bench ruling, the motion was denied as to defendants Kendrick and Williams, but granted in part as to Rainey. As to him, the motion was denied on the second state claim; but, for the excessive force and first state (flashlight) claims, the court found the verdict "against the overwhelming weight of the evidence". A new trial was granted on those claims, rather than a JNOV, "for the simple fact that ... [t]he jury did not reach the issue of damages" and "the Court would be substituting its evaluation of damages for that of a jury".

The final judgment and the order granting a new trial, based on the bench ruling, were entered on October 7. Spann moved for reconsideration of his new trial motion as to the City and Police Department. That motion was denied on October 11. On October 16, he moved for reconsideration of his new trial motion on all issues as to the individual defendants. And, on October 21, Rainey moved for reconsideration of the order granting a new trial. On November 6, even though the court had not ruled on Spann's October 16 motion, Spann filed a notice of appeal. Two days later, on November 8, the district court denied Spann's October 16 motion.

Spann did not file a new notice of appeal. And, on December 5, Rainey's October 21 motion was denied.

In February 1992, Rainey moved for dismissal or summary judgment on the basis of qualified immunity. That April, the court denied the motion without an opinion, stating in the order only that the motion was "not well taken".[4] Rainey appealed, and Spann filed a cross-appeal ("out of an abundance of caution"), but only as to the fall of 1991 post-trial orders.

## II.

As Spann conceded in his affirmative brief and at oral argument, we lack jurisdiction over his appeal and cross-appeal. They are dismissed.[5] As hereinafter discussed, although we have

[4] Because the district court apparently considered "matters outside the pleading", its ruling is treated as a denial of summary judgment. Fed. R. Civ. P. 12(b).

[5] In the statement of jurisdiction for his affirmative brief, in language similar to that in his notice of cross-appeal, Spann stated that he "took these appeals out of an abundance of caution, and believes that the Court has no jurisdiction as of yet as there has been no final judgment...." In fact, jurisdiction is lacking for either of two reasons.

First, our jurisdiction extends only to "final decisions" of the district courts. 28 U.S.C. § 1291. The district court has granted a new trial against Rainey. Accordingly, as Spann concedes, the judgment is not final, and, therefore, not appealable.

Second, even if he were appealing from a final judgment, neither of Spann's notices of appeal would be timely. His November 6 notice was filed two days before a ruling on his last post-trial motion. Therefore, the notice had "no effect". Fed. R. App. P. 4(a)(4). (In addition, the notice of appeal was filed approximately a month before Rainey's motion was decided. But, because Rainey's motion was filed more than ten days after entry of the judgment, it is considered a Fed. R. Civ. P. 60 motion, **United States v. Reyes**, 945 F.2d 862, 864 (5th Cir. 1991) (citing **Harcon Barge Co. v. D & G Boat Rentals, Inc.**, 784 F.2d 665 (5th Cir. 1986)

jurisdiction over Rainey's appeal, we hold, based on our required *de novo* review of the summary judgment ruling, that the motion was properly denied.

A.

Rainey invokes our jurisdiction under **Mitchell v. Forsyth**, 472 U.S. 511 (1985), because his appeal is from an order denying qualified immunity. Spann counters that the interests fostering such an appeal are not applicable, in part because of Rainey's failure to assert the qualified immunity defense by motion before the 1991 trial.[6] To the contrary, and for the following reasons, we find that those interests are still served at this late date, and that we, therefore, have jurisdiction.

Qualified immunity protects against being subjected to litigation and against liability. "[Q]ualified immunity is in part an entitlement not to be forced to litigate the consequences of

---

(en banc)), and does not come into play for Fed. R. App. P. 4(a)(4) purposes.) Spann's cross-appeal in 1992 as to the rulings in the fall of 1991 (filed "out of an abundance of caution") was far outside the requisite 30 day filing period. Fed. R. App. P. 4(a)(1).

[6]  Spann also asserts that Rainey's right to this appeal was waived by his failure to list the defense in the pretrial order for the 1991 trial. We do not reach whether the defense is waived if not asserted at a first trial, when a new trial is granted, because the defense was presented, at least in part, at trial. In the pretrial order, Rainey (and the other defendants) incorporated all of the defenses asserted in their answers to the complaint (as noted, qualified immunity was one), but without specifying them. Even though the district court ruled that this procedure waived the immunity defense, its jury instructions, at least in some respects, included some of the elements for immunity, including some aspects of objective reasonableness, and that element, at least in part, was argued by the individual defendants in their motions to dismiss at the close of Spann's case in chief and of the evidence.

official conduct". *Id*. at 527. To the extent that the defense is concerned with "the general costs of subjecting officials to the risks of trial -- distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service", *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982), those interests are partially lost at this stage in the game. Indeed, it is well established (and makes perfect sense) that the interests at the heart of qualified immunity are best served when, unlike here, the defense is asserted at the earliest possible stage, *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). Attention to those interests is the very purpose for allowing interlocutory appeals from the denial of qualified immunity.

Those interests are still served, however, even if in a more limited fashion, by assertion of the defense at some later stage. It is true that Rainey was pulled away from his official duties for the 1991 trial. And, it may even be true that having been subjected to that trial will inhibit his future exercise of judgment or deter others from public service. But, as noted, it is also true that qualified immunity is both an immunity from suit and a defense to liability. We have previously held that a public official does not waive this defense when he fails to take an interlocutory appeal and, instead, subjects himself to the burdens of discovery and trial. *See* *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988). Likewise, we do not consider the defense -- or the concomitant right to an interlocutory appeal from its denial --

waived by Rainey's failure to seek dismissal based on it prior to the 1991 trial. His interests in the avoidance of a second trial and, ultimately, in avoiding liability, would still be served by a successful assertion of the defense at this stage.

B.

As a police officer, Rainey is immune from both suit and liability unless it is shown that, at the time of the incident, he violated a clearly established constitutional right. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). The Supreme Court recently "clarif[ied] the analytical structure under which a claim of qualified immunity should be addressed", *Siegert v. Gilley*, ___ U.S. ___, 111 S.Ct. 1789, 1793 (1991). We must first determine whether the plaintiff has "allege[d] the violation of a clearly established constitutional right." *Id.* If he has, we then decide whether the defendant's conduct was objectively reasonable, *Salas*, 980 F.2d 305-06, because "[e]ven if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable".

For this second step, the "reasonableness ... is assessed in light of the legal rules clearly established at the time" of the incident in issue. *Id.* at 310. The contours, or standard, for a constitutional right may expand after the time of the alleged violation, and be the benchmark for proof at trial of that right and its claimed violation; but, as stated, the benchmark for objective reasonableness is that which existed at the time of the alleged violation -- we look to *clearly established* law at that

- 8 -

time.  *E.g., **id.** at 310; **Mouille v. City of Live Oak, Tex.**, 977 F.2d 924, 927-28 (5th Cir. 1992); **Duckett v. City of Cedar Park, Tex.**, 950 F.2d 272, 279-80 (5th Cir. 1992).

We conclude that Spann has alleged violation of a constitutional right which was clearly established as of the incident in November 1987, and that we cannot find that Rainey's actions were objectively reasonable.  Accordingly, for the reasons hereinafter stated, we concur in the denial of summary judgment.

1.

The Fourth Amendment, with its standard of reasonableness, governs claims of excessive force during arrest.  **Graham v. Connor**, 490 U.S. 386, 394 (1989); **King v. Chide**, 974 F.2d 653, 656-57 (5th Cir. 1992).  In this circuit, in order to state a claim for excessive force in violation of the constitution, a plaintiff must allege "(1) a[n] ... injury,[7] which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable."  **Johnson v. Morel**, 876 F.2d 477, 480 (5th Cir. 1989) (en banc).

Spann's complaint alleges that while he was in "diabetic shock", Rainey and the other officers, without any cause or

---

[7]    Our standard for establishing an excessive force claim under the Fourth Amendment also requires showing the injury to be "significant".  **Johnson v. Morel**, 876 F.2d 477, 479-80 (5th Cir. 1989) (en banc).  The Supreme Court, however, has overruled our use of this requirement for excessive force claims under the Eighth Amendment.  **Hudson v. McMillan**, 503 U.S. __, 112 S.Ct. 995 (1992). **Hudson's** implications for Fourth Amendment excessive force claims are not entirely clear, but we need not decide that question. Certainly *some* injury is still required, **Hudson**, 112 S.Ct. at 1000; and Spann's injury allegations would meet our standard of "significant" injury.

justification, and in an "unreasonable and excessive use of force", "did assault and beat him with their hands and night sticks as well as other instruments yet to be identified. Due to this beating, Aaron Spann suffered severe injuries." He describes those injuries as "severe and disabling injuries to his neck and back, severe cuts to his head, contusions and concussions, ... great pain and mental suffering". Spann also alleges that these injuries were the "direct and proximate result of defendant's acts". Assessing these allegations, as we must, in the light most favorable to Spann, *Salas*, 980 F.2d at 304, it is clear that, under the controlling *Johnson v. Morel* standard, he has stated a claim for violation of a constitutional right.

2.

We next consider the objective reasonableness of Rainey's actions in light of clearly established law at the time of the incident. This standard "is not capable of precise definition or mechanical application", *Graham*, 109 S.Ct. at 1872 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)), and thus requires a close examination of the facts and circumstances of each case. Of course, in conducting that examination, our consideration is limited to the record which was before the district court when it considered Rainey's motion. That record included, among other things, Rainey's motion for summary judgment, his deposition, and the transcript from the 1991 trial.

In gauging the objective reasonableness of the force used by Rainey, we must balance the amount of force used against the need

for that force, and, as discussed, must do so in light of the clearly established law as of the time of the incident. If we can conclude that he used no more force than would have been thought necessary by a reasonable police officer, Rainey is entitled to immunity and need not stand trial again.

In November 1987, our standard for excessive force in the course of arrest was governed by **Schillingford v. Holmes**, 634 F.2d 263, 265 (5th Cir Unit A Jan. 1981). Although this court then labelled the analysis one under the Due Process Clause,[8] we weighed many of the same factors considered relevant today. A valid claim for excessive force required showing (1) severe injuries[9], which were (2) "grossly disproportionate to the need for action under the circumstances", *id*. at 265, and (3) inspired by malice.[10] On this record, considering the facts in the light most favorable to Spann, we cannot conclude under the three-part **Schillingford** test that Rainey's actions were objectively reasonable.

First, if Spann is able to prove at trial the facts that he now alleges, he will have established injuries which are sufficiently severe. Second, we cannot conclude that a reasonable

_____

[8]    It is now clearly established that claims of excessive force during arrest are governed by the Fourth Amendment. *See **Graham v. Connor***, 490 U.S. 386, 394 (1989).

[9]    **Johnson**, 876 F.2d 477, redefined this "severe injury" prong as one of "significant" injury. Though even **Johnson's** "significant injury" has now been called into question, see *supra* note 7, our analysis is not affected, because we conduct this analysis with reference to the law as it existed in November 1987.

[10]    This subjective component (malice) has since been expressly held "incompatible" with the current Fourth Amendment analysis. **Graham**, 109 S.Ct. at 1872.

- 11 -

police officer would think the extent of force allegedly used was necessary under the circumstances. It is uncontested that the only charge ultimately filed against Spann was resisting arrest. He contends that he was not being arrested for any underlying crime and that no warrant for his arrest was outstanding. He further contends that he "was not violating any laws, was not attempting to interfere with any defendants' execution of duties, and was not engaged in assaulting, threatening ... behavior toward the ... officers ... or any other citizen." Furthermore, as noted, it is apparently uncontested that he was in a "diabetic coma" at the time of the alleged attack. It is also uncontested that Spann was confronted by two police officers, with another arriving shortly thereafter, and that Rainey struck Spann twice on the head with his flashlight. And third, although it is less clear that the incident reflects the requisite malice, we are unable to conclude that this element is absent.

Of course, at trial, Spann will bear the burden of proving the facts here considered in the light most favorable to him. And, of course, our inability to now conclude that Rainey's actions were objectively reasonable does not end the inquiry. In sum, in order to establish Rainey's liability, and assuming that Rainey will continue to assert qualified immunity, Spann must still prove the elements for his excessive force claim, and that Rainey's actions were not objectively reasonable in light of clearly established law in 1987.

### III.

Accordingly, Spann's appeal in No. 91-7225 and cross-appeal in No. 92-7290 are **DISMISSED**, and the denial of summary judgment in Rainey's appeal, No. 92-7290, is **AFFIRMED**.