Rene GARZA and Jaime Sosa, Plaintiffs,

v.

UNITED STATES of America A.W. De Leon, J. Rangel and Four or More Unknown Agents of the United States Border Patrol, All as Individuals and in Their Official Capacities, Defendants.

Civ. A. No. L–93–17.

United States District Court,
S.D. Texas,
Laredo Division.

Jan. 19, 1995.

Robert F. Greenblum, Lawyers' Committee for Civ. Rights, Immigrant and Refugee Rights, San Antonio, TX Mary A. Kenney, Lawyers Committee for Civ. Rights, San Antonio, TX, for plaintiffs.

Howard E. Rose, U.S. Attys. Office, Houston, TX, for defendant.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is Defendants' motion for summary judgment. Plaintiffs assert a Bivens claim against two Border Patrol agents, De Leon and Rangel, and also sue the United States under the Federal Tort Claims Act. The case arises out of an incident occurring on March 6, 1992, when the Plaintiffs, then students at Texas A & I University in Kings-ville, were stopped on a highway and briefly detained during an investigation of suspected criminal activity. The Bivens claims are that Plaintiffs were detained and searched illegally and that they were denied equal protection of the laws by being "singled out" on the basis of "their Hispanic descent." They also allege torts of negligent and intentional infliction of emotional distress, assault, negligence, false arrest, and false imprisonment.

### Bivens Claims

The Court must first determine whether Plaintiffs have asserted violation of a constitutional right of any kind and then decide the issue of qualified immunity. The immunity defense provides a strong shield against constitutional claims asserted under Bivens, and thus a heavy burden for Plaintiffs to overcome. The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The Court must evaluate the objective reasonableness of the Defendants' actions assessed in the light of "clearly established" legal rules existing at the time. Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir.1994) (citing White v. Taylor, 959 F.2d 539, 544 (5th Cir.1992)). So long as reasonable public officials could differ on the lawfulness of the Defendants' actions, the Defendants are entitled to qualified immunity. Id.

The Stop and Detention. Plaintiffs claim there was no basis for the agents to stop them. Even if there was, Plaintiffs contend that the Fourth Amendment was nevertheless violated because, after the stop, the agents exceeded the reasonable scope of the detention. See Terry v. Ohio, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

A roving Border Patrol may stop a traveling vehicle near the international border if the agents can point to specific and articulable facts which, together with rational inferences from those facts, reasonably warrant suspicion that the vehicle is engaged in illegal activity. United States v. Lopez, 911 F.2d 1006, 1009 (5th Cir.1990). In assessing reasonable suspicion, a court must examine

the totality of the circumstances, including the collective knowledge of all the officers. *Id.* Factors that can be properly considered include characteristics of the area, proximity to the border, traffic patterns, the agents' previous experience, the suspect's type of vehicle, and the driver's behavior. The circumstances need not convict the suspects beyond a reasonable doubt; indeed a brief investigatory stop does not even require probable cause to believe that a crime has been committed. Also, the issue is not what are later determined to be the true facts, nor Plaintiffs' explanations for why they believed their conduct was justified. The issue is how did the totality of circumstances appear to the agents and, based on those circumstances, were their resulting suspicions reasonable. Considering those circumstances which are not in dispute—including the location, type of vehicle, Agent Flores' experience, and Plaintiff's erratic driving—the Court concludes that the agents had reason for a brief investigatory stop. Moreover, they would at least have had a reasonable, good-faith belief that the stop was justified. *See United States v. Ramirez–Lujan,* 976 F.2d 930, 933 (5th Cir.1992) (outlining factors to be weighed in reasonable suspicion test), *cert. denied,* —— U.S. ——, 113 S.Ct. 1587, 123 L.Ed.2d 153 (1993).

■ *The Detention.* Plaintiffs contend that the facts occurring after the stop converted an investigatory detention into a "de facto arrest." The facts indicate that Agent Flores, believing the Plaintiffs were trying to elude him, radioed for assistance. His communication somehow was understood by Rangel and De Leon to mean that Plaintiffs' vehicle had refused to yield to Flores. This conclusion was untrue since Flores had never actually used his lights or siren to command a stop. Unquestionably, Plaintiffs' vehicle eventually stopped in response to Border Patrol units stationed ahead. Although the parties debate whether this was a "blockade," the Court finds that characterization to be of little relevance. It is undisputed that the agents used what the Government terms "felony stop tactics." Standing behind the doors of their vehicles, they drew weapons and ordered the Plaintiffs to throw their car keys out the window, put their hands on their heads, and get out of the car. Plaintiffs were then instructed to get on their knees during a patdown search. Plaintiffs suggest that the agents "worked themselves into an overly-excited state," partly because of the miscommunication. However, the Fifth Circuit has held in a similar fact situation that erroneous information transmitted among agents, even if resulting from negligence, does not affect the agents' good-faith reliance on the misinformation. *United States v. DeLeon–Reyna,* 930 F.2d 396 (5th Cir.1991) (en banc).

The question then becomes whether the conduct of the agents was reasonable based on the circumstances as they understood them to be. Prevailing law indicates that it was. For example in *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), the Court found that a proper investigatory stop was not a de facto arrest when the officer approached with gun drawn, ordered the driver to assume a "spread eagled" position against the side of the truck, and patted him down. In *United States v. Sanders,* 994 F.2d 200 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 608, 126 L.Ed.2d 572 (1993), the Fifth Circuit reviewed decisions upholding a proper investigatory stop rather than de facto arrest when an officer approached with gun drawn and pointed it at occupants of a vehicle that had just led police on a high speed chase; when officers blockaded the path of an airplane suspected of involvement in drug smuggling and approached it with drawn weapons; and when officers blocked the path of a suspect's car with their own car and exited with guns drawn. *Id.* at 204–05. The *Sanders* court held that pointing a weapon at a suspect, ordering him to lie on the ground, and handcuffing him, does not automatically convert an investigatory detention into an arrest. *Id.* at 206. "The relevant inquiry is always one of reasonableness under the circumstances." *Id.* The evidence in the instant case indicates that after the patdown search, the guns were withdrawn. The agents then proceeded to interview both Plaintiffs and, with the admitted consent of the Plaintiffs, searched the vehicle. Finding nothing, the Plaintiffs were released.

Admittedly there is a fact dispute about the duration of this entire incident. Plaintiffs opine that the incident consumed between twenty and twenty-five minutes; the agents say it took less than one minute. Under the law, however, there is "no rigid time limitation on *Terry* stops." *Sharpe,* 470 U.S. at 685, 105 S.Ct. at 1575. A party's necessarily imprecise estimate of time, therefore, is not outcome determinative. Instead the focus is on the purposes to be served by the stop and the time "reasonably needed to effectuate those purposes." *Id.* The question is "whether the [agents] diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Id.* It is clear from this record that the agents moved quickly through their investigation. After the patdown, the Plaintiffs were interviewed separately. The vehicle, including the trunk, was searched, and Plaintiffs were then free to leave. The Court concludes that the undisputed facts satisfy the *Sharpe* test.

Another potential fact issue is whether the officers, immediately after the stop, used obscenities, specifically "put your f——ing hands up" and "step out of the f——ing car." Assuming those statements were made, the agents' conduct was unprofessional and impolite. However, the Court is aware of no authority for the proposition that the use of obscenities can convert an investigatory stop into a de facto arrest. The Defendants' motion for summary judgment on the unreasonable stop and detention claim is GRANTED.

■ *Excessive Force.* A claim for excessive force requires, among other things, use of force clearly excessive to the need, the excessiveness of which was objectively unreasonable. *Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir.1993). For reasons already discussed, the Court concludes that no excessive force was used. Moreover, for purposes of the qualified immunity defense, the Court must consider the status of the law in March 1992, when this incident occurred. At that time, the law required a further element, namely that the Plaintiffs' injury be "significant." *Id.* at 1114 n. 7. That requirement was finally eliminated by the Fifth Circuit in

*Harper v. Harris County,* 21 F.3d 597, 600 (5th Cir.1994); however, as late as March 1993 this issue was explicitly deemed "not entirely clear" in this circuit. *Spann* at 1114 n. 7. The alleged injuries in this case, at least as to Plaintiff Garza, involved humiliation, nightmares, trouble sleeping, and general stress.[1] Because the status of the law in 1992 required a person claiming excessive force to prove a "significant injury," the inquiry becomes whether the injuries listed above would fit that description. The likelihood is that they would not. For example in *Wisniewski v. Kennard,* 901 F.2d 1276 (5th Cir.), *cert. denied,* 498 U.S. 926, 111 S.Ct. 309, 112 L.Ed.2d 262 (1990), the plaintiff was twice punched in the stomach; a revolver stuck in his mouth; and he was threatened that his head would be blown off. He claimed to have been frightened and suffering from excess fear and nightmares. Nevertheless the injury was deemed not significant. *Id.* at 1277. A similar result was reached in *Mouille v. City of Live Oak,* 918 F.2d 548 (5th Cir.1990) (fear for safety of unborn child) and *Wesson v. Oglesby,* 910 F.2d 278 (5th Cir.1990) (choke hold causing plaintiff to lose consciousness briefly). At the very least, the foregoing authorities demonstrate that it was not "clearly established" in 1992 that the type of injuries involved in this case were "significant." The Defendants' motion for summary judgment on the excessive force claim is GRANTED.

*Equal Protection.* The Plaintiffs also assert a claim against the agents for a violation of their equal protection rights. Although nothing in the record appears to support such a claim, the Court will defer ruling to allow them to do so.

### FTCA Claims

The Court has reviewed the parties' briefs on the Plaintiffs' FTCA claims and has concluded that additional briefing is required on the following issues:

(1) Have the Plaintiffs fulfilled the administrative prerequisites of 28 U.S.C. § 2675(a)?

---

1. The Court finds no evidence of the nature of    Sosa's alleged injuries.

(2) What is the relationship between the discretionary function exception of 28 U.S.C. § 2680(a) and the "law enforcement proviso" of 28 U.S.C. § 2680(h)? How do these provisions relate to the Plaintiffs' claims under the FTCA?

(3) Does the FTCA incorporate the good faith exception from tort liability for state law enforcement officers? *See, e.g., Copeland v. Boone,* 866 S.W.2d 55, 57 (Tex.App.— San Antonio 1993, writ denied w.o.j.).

(4) What is the basis of the cause of action for negligence alleged in paragraph 34(d) of the Plaintiffs' first amended complaint? What act or omission is involved and how does this claim differ from the others in paragraph thirty-four?

The Plaintiffs shall have until February 3, 1995 to respond to this memorandum. The United States shall have until February 20, 1995 to respond.