**Manoj Ramchand SAMTANI, Plaintiff,**

v.

**CITY OF LAREDO, et al., Defendants.**

**CIVIL ACTION NO. 5:15–CV–00174**

United States District Court, S.D. Texas, Laredo Division.

Signed 08/16/2017

Manoj Ramchand Samtani, Laredo, TX, pro se.

Albert Lopez, Law Offices of Albert Lopez, San Antonio, TX, Hector Carlos Ramirez, United States Attorney's Office Southern District of Texas, Laredo, TX, Silverio A. Martinez, Jr., Law Office of Silverio Martinez, Laredo, TX, for Defendants.

## CLAIM CONSTRUCTION MEMORANDUM AND ORDER

THE HONORABLE J. SCOTT HACKER, United States Magistrate Judge

■ Plaintiff Manoj Samtani ("Samtani"), a *pro se* litigant, filed his Complaint against City of Laredo ("the city"), Laredo Police Department ("LPD"), LPD Officer Juan Morales ("LPD Morales") (in his individual and official capacity), United States of America, United States Customs and Border Protection ("CBP"), CBP Officer #1 (in his individual and official capacity), CBP Officer #2 (in his individual and official capacity), CBP Officer #3 (in his individual and official capacity), CBP Officer #4 (in his individual and official capacity), and CBP Officer #5 (in his individual and official capacity). (Dkt. No. 1 ("Complaint")). Subsequently, the list of unknown[1] Defendants was replaced[2] by CBP Officer Franco Borreca (in his individual and official capacity), CBP Officer Juan Cortinas (in his individual and official capacity), CBP Officer Yoel De Angel (in his individual and official capacity), CBP Officer Alexiz Gonzalez (in his individual and official capacity), CBP Officer Jorge Ruiz (in his individual and official capacity), CBP Officer Oscar Zenteno (in his individual and official capacity), and Federal Armed Security Officer[3] Rey Vasquez ("FAS Vasquez").

■ Samtani's *pro se* Complaint is now ripe for construction. *Pro se* com-

---

1. "A plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 474 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of N.Y.*, 426 F.3d 549 (2d Cir. 2005). *See also Skorupski v. County of Suffolk*, 652 F.Supp. 690, 694 (E.D.N.Y. 1987) (rejecting defendants' argument that they were entitled to summary judgment because plaintiff cannot specify which of the officers struck him and finding that all of the officers were potentially liable because they have an affirmative duty to intervene); *Fischl v. Armitage*, 128 F.3d 50, 57 (2d Cir. 1997) (finding evidence that defendant was in the vicinity of the attack on plaintiff and did nothing to stop it sufficient to show defendant's personal involvement); *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (holding plaintiff's inability to identify which officer allegedly assaulted him did not preclude excessive force claims); *Smith v. Men-*

*singer*, 293 F.3d 641, 650 (3d Cir. 2002) (same).

2. *See* Dkt. Nos. 31 (Return of Service Executed as to Franco Borreca); 32 (Return of Service Executed as to Oscar Zenteno); 38 (Order directing U.S. Marshals to effectuate personal service of Alexiz Gonzalez, Yoel De Angel, Rey Vasquez, Juan Cortinas, and Jorge Ruiz); 41 (Return of Service Executed as to Alexiz Gonzalez); 42 (Return of Service Executed as to Jorge Ruiz); 43 (Return of Service Executed as to Rey Vasquez); 44 (Return of Service Executed as to Yoel De Angel); 45 (Return of Service Executed as to Juan Cortinas).

3. The Court is uncertain of the correct title of Rey Vasquez. The government refers to Vasquez as a "Federal Protective Service Security Officer." (Dkt. No. 83 at 5; Dkt. 83–1 at ¶ 11). Such an officer is a federal employee of

plaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir. 1990). They are to be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines*, 404 U.S. at 520, 92 S.Ct. 594. A court is expected to exercise "common sense" in interpreting these frequently diffuse pleadings, *United States ex rel. Simmons v. Zibilich*, 542 F.2d 259, 260 (5th Cir. 1976) (citation omitted), and is to accord them a "liberal yet realistic construction." *Johnson v. Estelle*, 625 F.2d 75, 77 (5th Cir. 1980). Although *pro se* pleadings are to be treated quite liberally, at least "some facts must be alleged that convince [the court] that the plaintiff has a colorable claim; conclusory allegations will not suffice." *Mills v. Criminal Dist. Court # 3*, 837 F.2d 677, 678 (5th Cir. 1988). A court must scrutinize the pleadings of a non-lawyer appearing *pro se* with especial care to determine if, among the dabblings, some colorable claim exists. Fed. R. Civ. P. 8; *Haines*, 404 U.S. at 520–21, 92 S.Ct. 594; *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980); *McDonald v. Hall*, 610 F.2d 16, 17 (1st Cir. 1979); *Guerro v. Mulhearn*, 498 F.2d 1249, 1255–56 (1st Cir.1974). In performing this task, a court will accept as true all material factual allegations and will view the complaint in the light most favorable to the plaintiff. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014); *United States v. Trevino*, 554 Fed.Appx. 289, 293 (5th Cir. 2014); *Johnson v. Epps*, 479 Fed.Appx. 583, 587 (5th Cir. 2012).

While much liberality is allowed in construing *pro se* complaints, a *pro se* litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim. *See Carita v. Mon Cheri Bridals, LLC*, No. 10 2517, 2012 WL 3638697, at *2 (D.N.J. Aug. 22, 2012) ("It is not the Court's duty to pore through hundreds of pages of evidentiary record in order to find one party's saving grace buried underneath"); *Lacadie v. Town of Milford*, Civ. No. 07-101, 2008 WL 1930410, at *6 n. 8 (D. Me. May 1, 2008) ("Courts are not required or even expected to independently sift through the record in search of evidence that might salvage a *pro se* plaintiff's case"). Likewise, the Court's construction process does not preclude a defendant from filing a subsequent Rule 12(b)(6) motion. *See Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007) (The "*sua sponte* [construction] process is cumulative of, not a substitute for" a Rule 12 motion.).

In light of these principles, the Court now construes Samtani's Complaint, holding that the Complaint states the following causes of action:[4]

the United States Department of Homeland Security, Federal Protective Service. *See, e.g.*, 40 U.S.C. § 1315; Homeland Security Act of 2002. Vasquez declares that he was a "Federal Armed Security Officer" employed by a private company named "Paragon Systems, Inc., who was sub-contracted by the US Government," at the time of the alleged incident. (Dkt. No. 98–1 at 1). While the Court does not accept the ramifications of Vasquez' declaration, it shall refer to Vasquez as a Federal Armed Security ("FAS") Officer for purposes of this Memorandum and Order in light of his declaration.

4. Although the Court construed *Miranda* violations under Fifth Amendment pursuant to § 1983 and *Bivens* at the February 9, 2017 Motions Hearing, the Court now *sua sponte* dismisses these claims. "The Supreme Court has not established a civil cause of action for *Miranda* violations pursuant to the Fifth

**I. Deprivation of Civil Rights by the City of Laredo:** Samtani's Complaint states two claims under 42 U.S.C. § 1983 against the city for violating Samtani's federal rights under the Fourth Amendment.

■ First, Samtani claims that there is a "persistent, widespread practice of city ... employees namely police officers [ ]— that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official municipal policy." (Dkt. No. 1 at 15). Specifically, Samtani alleges that "sufficiently numerous incidents of police officers using excessive force or tazing [sic] citizens establishes custom and accession to that custom by the City's policy makers." (*Id.*). Samtani claims that the "City of Laredo has actual or constructive knowledge of this practice, custom, and/or policy or procedure" within the LPD. (*Id.*). Samtani's Complaint states sufficient facts that give rise to a cognizable claim against the city for promoting the use of excessive force within the LPD. *See, e.g., In re Foust*, 310 F.3d 849, 861 (5th Cir. 2002) ("In suits against a municipality, a plaintiff must [allege] that a [city] policy was the moving force behind the constitutional violation.") (internal quotation omitted).

■ Second, Samtani claims that the "City of Laredo [is] liable for inadequate training of [its] respective officers under § 1983 [because] failure to train amounts to deliberate indifference to the rights of the persons with whom the police ... come in contact." (*Id.*). In particular, Samtani alleges that the LPD's "training program in relation to the tasks the particular officer[s] must perform is inadequate in the respect that the program fails to teach new police ... that using excessive force [against] citizens ... violates [their] constitutional rights." (*Id.*). Samtani concludes that this "deficiency in training actually caused Officer Juan Eduardo Morales ... to violate Plaintiff's constitutional rights." (*Id.* at 15–16). Samtani's Complaint states sufficient facts that give rise to a cognizable claim under § 1983 against the city for inadequate training of the LPD with respect to the use of excessive force. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (Section 1983 liability may arise if, "in light of the duties assigned to specific officers[,] the need for more or different training is so obvious and the inadequacy so likely to result in the violation of constitutional rights that the policy-makers can reasonably be said to have been deliberately indifferent to the need."); *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1365, 179 L.Ed.2d 417 (2011). ("[Plaintiff] had to show that it was so predictable that failing to train the [officers] amounted to *conscious disregard* for [Plaintiff's] rights.").

■ **II. Deprivation of Civil Rights by Laredo Police Department Officer Juan Morales (in his individual capacity[5]):** Samtani's Complaint states a

Amendment, instead finding that Fifth Amendment violations occur at trial." *Faccio v. Eggleston*, No. 1:10-CV-699, 2011 WL 3666588, at *5 (N.D.N.Y. Aug. 22, 2011). "*Miranda* warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment." *Neighbour v. Covert*, 68 F.3d 1508, 1510–11 (2d Cir. 1995).

5. While Samtani sues LPD Morales in his official capacity, "an official capacity suit must also contain the elements set forth in *Monell*." *Wilbert v. City of Chicago*, 768 F.Supp. 253, 255 (N.D. Ill. 1991). Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), "a plaintiff must demonstrate that a [city] 'policy' was the 'moving force' behind the constitutional violation." *In re Foust*, 310 F.3d 849, 861 (5th Cir. 2002) (quoting *Brown v. Bryan County, OK*, 219 F.3d 450, 457 (5th Cir.2000)). "A city is not liable for the intentional torts of its employees under § 1983 unless an official policy, custom or practice led to those torts." *Gast v. Singleton*, 402 F.Supp.2d 794, 798 (S.D. Tex. 2005).

claim under 42 U.S.C. § 1983 against LPD Morales for illegal search and seizure (unlawful arrest or detention) in violation of the Fourth Amendment. Samtani claims that LPD Morales, among others, "ran towards the 300 block of Convent Avenue only to slam Plaintiff Luvi Samtani to the ground, using excessive force, emptied his pockets completely, emptied his wallet, took out all his credit cards, identification and cash, looked through his personal business information (business cards from his suppliers), snooped around, [and] tried to look through his cell phone records." (*Id.* at 10). Samtani further alleges that "it is clear that Plaintiff was just taking a video, [and] then [came] the assault, false arrest, [and] unlawful search [by] Officer Juan Eduardo Morales," who deprived Samtani of his civil rights. (*Id.* at 17). Samtani is correct that the "Fourth Amendment guarantees security from unreasonable search and seizure." (*Id.* at 14). "It includes ... the right to be free from arrests, without probable cause to believe the arrested person committed a crime." (*Id.*). Samtani claims that "he was subjected to an unreasonable search and seizure ... and had his entire body searched unlawfully" at the hands of LPD Morales. (*Id.*). For these reasons, Samtani alleges sufficient facts that give rise to a cognizable claim against LPD Morales under § 1983 in violation of the Fourth Amendment for unlawful search and seizure. *See, e.g., United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (The general rule is that "a person has been *seized* within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.");

*Robertson v. Lucas,* 753 F.3d 606, 614 (6th Cir. 2014) ("A plaintiff must prove two elements to prevail on [a § 1983 or *Bivens* claim]: (1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law."); *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from [a warrantless seizure] without probable cause is a clearly established constitutional right.").

Samtani's Complaint also states a claim under 42 U.S.C. § 1983 against LPD Morales for excessive force in violation of the Fourth Amendment. Samtani complains that he was "unlawfully attacked by being pulled and slammed to the ground by Officer Juan Eduardo Morales ... to the point where he was struggling for air; said actions of Officer Juan Morales left slight bruises on both [Samtani's] elbows, but still today, Plaintiff suffers from upper chest pain on the left side of his body plus emotional injury." (*Id.* at 16). Samtani remarks that these injuries "resulted directly and only from the use of force that was clearly excessive to the need and the excessiveness of which was objectively unreasonable." (*Id.*). For at least these reasons, Samtani states a claim of excessive force under § 1983 against LPD Morales. *See, e.g., Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir. 1993) ("[T]o state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.") (internal quotations omitted).

The Court does not construe § 1983 claims against the city vis-à-vis LPD Morales in his "official capacity," except for excessive force claims against the city, because Samtani fails to allege that municipal policies, customs, or practices led to the constitutional violations alleged in Section II. The city "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 663, 98 S.Ct. 2018.

Samtani's Complaint further states a claim under 42 U.S.C. § 1983 against LPD Morales for cruel and unusual punishment. At the February 9, 2017 Motions Hearings, Samtani argued that LPD Morales caused other officers to throw him into the rear seat of LPD vehicle unit 1291 having extreme heat and that they observed him sweating for over thirty minutes. In his Complaint, Samtani argues that LPD Morales' actions constituted deliberate indifference. (Dkt. No. 1 at 15). *See, e.g., Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir.1996) (en banc) (Eight Amendment liability "for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a [plaintiff] but responded with deliberate indifference to that risk. ... [T]he correct legal standard is not whether the ... officers 'knew or should have known,' but whether they had gained actual knowledge of the substantial risk of [serious harm] and responded with deliberate indifference.").

**III. Tort Claims against Laredo Police Department Officer Juan Morales (in his individual capacity):** Samtani's Complaint states a claim for assault under the Texas Tort Claims Act ("TTCA") against LPD Morales. Samtani claims that LPD Morales "ran towards the 300 block of Convent Avenue only to slam Plaintiff Luvi Samtani to the ground, using excessive force ....". Samtani complains that he was "unlawfully attacked by being pulled and slammed to the ground by Officer Juan Eduardo Morales ... to the point where he was struggling for air; said actions of Officer Juan Morales left slight bruises on both [Samtani's] elbows, but still today, Plaintiff suffers from upper chest pain on the left side of his body and plus emotional injury." (*Id.* at 16). Elaborating on this claim in his sworn Motion for Summary Judgment (Dkt. No. 80 ("Motion for Summary Judgment")), Samtani alleges that LPD Morales assaulted

him after other officers at the scene tackled him to the ground. (Dkt. 80 at 79). Specifically, LPD Morales "entered the pile, picked up the Plaintiff like a suitcase then dropped him face down then picked him up again and dropped him again to the ground face down." (*Id.*). This was *after* Samtani had been subdued by other officers and placed in handcuffs by FAS Vasquez. (*Id.*). Under this set of alleged facts, Samtani has stated a claim of assault against LPD Morales that overcomes the peace officer privilege. *See, e.g., Doe v. Beaumont I.S.D.*, 8 F.Supp.2d 596, 616 (E.D. Tex. 1998) ("The elements required to plead assault in Texas are (1) a harmful or offensive contact; (2) with a plaintiff's person.") (internal quotations omitted); Tex. Penal Code Ann. § 9.51 (The peace officer privilege can only be invoked if there is a "reasonable belief" that the use of force is "necessary").

Samtani further states a claim under the TTCA for false imprisonment against LPD Morales. At the February 9, 2017 Motions Hearings, Samtani argued that LPD Morales caused other officers to throw him into the rear seat of LPD vehicle unit 1291 having extreme heat. Samtani thus states a claim of false imprisonment against LPD Morales. *See, e.g., Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985) (Civil liability for false imprisonment attaches when: 1) there is a willful detention of a person; 2) against the consent of the person detained; and 3) the detention is without the authority of law.); *Sanchez v. Garza*, 581 S.W.2d 258, 259 (Tex.App. Corpus Christi 1979, no writ); *Pete v. Metcalfe*, 8 F.3d 214, 218 219 (5th Cir.1993).

**IV. Deprivation of Civil Rights by Customs and Border Patrol Officers Franco Borreca, Juan Cortinas, Yoel De Angel, Alexiz Gonzalez, Jorge Ruiz, and Oscar Zenteno (in their individual capacities):** Samtani's Complaint states

claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against the six (6) CBP officers for illegal search and seizure (false arrest or unlawful detainment) in violation of the Fourth Amendment. Samtani alleges that the CBP officers, among others, "ran towards the 300 block of Convent Avenue only to slam Plaintiff Luvi Samtani to the ground, using excessive force, emptied his pockets completely, emptied his wallet, took out all his credit cards, identification and cash, looked through his personal business information (business cards from his suppliers), snooped around, [and] tried to look through his cell phone records." (*Id.* at 10). Samtani claims that "it is clear that [he] was just taking a video, [and] then [came an] assault, false arrest, [and] unlawful search ..." at the hands of the CBP officers. (*Id.*). Samtani further claims that "LPD Officer Juan Eduardo Morales AKA 'Big John' ... gave Samtani a bogus citation [for] 'Disorderly Conduct and Obscene Gesture.' " (*Id.*). Yet at no time, according to Samtani, did he display his middle finger or act in a disorderly manner. (*Id.*). Samtani is correct that the "Fourth Amendment guarantees security from unreasonable search and seizure.' (*Id.* at 14). "It includes ... the right to be free from arrests, without probable cause to believe the arrested person committed a crime." (*Id.*). Samtani claims that "he was subjected to an unreasonable search and seizure ... and had his entire body searched unlawfully" at the hands of the CBP officers. (*Id.*). The implication here is that the seizure of Samtani's person and the search incidental thereto were unlawful because no reasonable officer would have believed that probable cause existed for the underlying citation of disorderly conduct. For these reasons, Samtani alleges sufficient facts that give rise to *Bivens* claims against the CBP officers for unlawful search and seizure in violation of the

Fourth Amendment. *See, e.g., Mendenhall*, 446 U.S. at 554, 100 S.Ct. 1870 (1980) (The general rule is that "a person has been *seized* within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."); *Robertson*, 753 F.3d at 614 ("A plaintiff must prove two elements to prevail on [a § 1983 or *Bivens* claim]: (1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law."); *Mangieri*, 29 F.3d at 1016 ("The right to be free from [a warrantless seizure] without probable cause is a clearly established constitutional right."); *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983 the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials.").

Samtani's Complaint also states *Bivens* claims by alleging that the six (6) CBP officers used excessive force in seizing Samtani in violation of his Fourth Amendment rights. Samtani argues that the CBP officers "attacked" him as he was "being pulled and slammed to the ground ... to the point where he was struggling for air." (*Id.* at 16). As a result, Samtani claims that he now suffers "from upper chest pain on the left side of his body plus emotional injury." (*Id.*). Samtani claims that his injuries "resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was objectively unreasonable." (*Id.*). Samtani further claims that the "CBP Officers never had a good faith [basis] because all six of them acted in a manner demonstrating that they were plainly incompetent and knowingly violated Plaintiff's civil rights." (*Id.* at 17). Samtani alleges that "it is clear

that Plaintiff was just taking a video [and] then [came] [an] assault [and] unlawful search" at the hands of the CBP officers. (*Id.* at 18). For at least these reasons, Samtani has stated *Bivens* claims against the six CBP officers for use of excessive force in violation of the Fourth Amendment. *See, e.g., Spann*, 987 F.2d at 1115 ("[T]o state a claim for excessive force in violation of the Constitution, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.") (internal quotations omitted).

Samtani further states claims against the six CBP officers under *Bivens* for retaliation under the First Amendment. Samtani's video, attached to the Complaint (Dkt. No. 1–2 ("Exhibit TEF")), shows him shouting profane language at the CBP officers while waiting outside of "the Laredo Port of Entry on top of the stairs on Zaragoza Street." (Dkt. No. 1 at 9). Samtani's profanity was directed towards the CBP officers and overheard by them. (Dkt. No. 88–1 ("Declaration of Jorge Ruiz") at ¶ 11); Dkt. No. 88–2 ("Declaration of Yoel De Angel") at ¶ 4); Dkt. No. 88–3 ("Declaration of Oscar Zenteno") at ¶ 3). Samtani implies that the CBP officers retaliated against him because of his exercise of free speech.[6] Samtani is now in "fear to go to Mexico because he feels that on his return to the Laredo Port of Entry that he's going to be mistreated, bullied, and even assaulted by a bunch of [CBP officers]." (Dkt. No. 1 at 12). Samtani alleges sufficient facts to state *Bivens* claims against the six CBP officers for retaliation in violation of the First Amendment. *See, e.g.,*

*Alexander v. City of Round Rock,* 854 F.3d 298, 308 (5th Cir. 2017) (To state a First Amendment retaliation claim, "Plaintiff must [allege] that (1) he was engaged in constitutionally protected activity, (2) the officers' action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct."); *Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162, 165 (5th Cir. 1997) (A police officer is "expected to exercise a higher degree of restraint than an average citizen, and thus be less likely to respond belligerently to fighting words.").

Lastly, Samtani's Complaint states a claim under *Bivens* against the CBP officers for cruel and unusual punishment. At the February 9, 2017 Motions Hearings, Samtani argued that LPD Morales caused other officers, including the CBP officers, to throw him into the rear seat of LPD vehicle unit 1291 having extreme heat and that the officers observed him sweating for over thirty minutes. Samtani further argues in his Complaint that the officers' actions constituted deliberate indifference. (Dkt. No. 1 at 15). *See, e.g., Hare v. City of Corinth, Miss.,* 74 F.3d 633, 650 (5th Cir. 1996) (en banc) (Eight Amendment liability "for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a [plaintiff] but responded with deliberate indifference to that risk .... [T]he correct legal standard is not whether the ... officers 'knew or should have known,' but whether they had gained actual knowledge of the substantial risk of

6. While this allegation is implied in Samtani's Complaint, it is made explicit in Samtani's sworn Motion for Summary Judgment. (*See* Dkt. 80 at 12 ("The fact is that all of the Defendants did not like the fact that ... Plaintiff Luvi Samtani was obnoxious, and it is not a crime to be obnoxious, and, also, they (all the Defendants) did not like Plaintiffs Free Speech, AND THAT IS WHY THEY RETALIATED AGAINST HIM.").

[serious harm] and responded with deliberate indifference.").

### V. Federal Tort Claims against Customs and Border Patrol Officers Franco Borreca, Juan Cortinas, Yoel De Angel, Alexiz Gonzalez, Jorge Ruiz, and Oscar Zenteno (in their official capacities):

Samtani's Complaint states claims under the Federal Tort Claims Act ("FTCA")[7] against the United States[8] for assault and false imprisonment[9] by the six CBP officers.[10] *See supra,* Sections III, IV. 28 U.S.C. § 2680(h) expressly waives sovereign immunity for intentional torts by federal law enforcement and investigative officers.

### VI. Texas Tort Claims against Customs and Border Patrol Officers Franco Borreca, Juan Cortinas, Yoel De Angel, Alexiz Gonzalez, Jorge Ruiz, and Oscar

Zenteno (in their individual capacities): Samtani's Complaint states claims under the TTCA[11] against the six CBP officers for assault and false imprisonment. *See supra,* Sections III and IV and note 9.

### VII. Claims against Federal Armed Security Officer Rey Vasquez:

As a preliminary matter, the Court is uncertain of the status of FAS Vasquez; i.e., whether he is a federal employee (i.e., Federal Protective Service Officer) or a federal subcontractor (i.e., Federal Armed Security Officer). See *supra,* note 3. To the extent that FAS Vasquez is a federal employee, the Court construes the following *Bivens* claims against Vasquez: illegal search and seizure (false arrest or unlawful detainment) in violation of the Fourth Amendment; use of excessive force in seizing Samtani in violation of his Fourth Amendment rights; retaliation under the First

---

**7.** While the government argued at the February 9, 2017 Motions Hearing that Samtani failed to exhaust his administrative remedies, thereby depriving this Court of jurisdiction to adjudicate his claims under the FTCA, there is no evidence of record that confirms this. Nevertheless, this Memorandum and Order does not preclude the government from filing a motion that seeks to dismiss these claims. *Teahan,* 481 F.Supp.2d at 1119.

**8.** "The Federal Tort Claims Act provides that the United States is the sole party which may be sued for personal injuries arising out of the [torts] of its employees." *Allen v. Veterans Admin.,* 749 F.2d 1386, 1388 (9th Cir. 1984) (citing 28 U.S.C. §§ 1346(b), 2679(a)). Individual agencies of the United States may not be sued. *Evans v. United States Veterans Admin. Hosp.,* 391 F.2d 261, 262 (2d Cir.1968) (per curiam), *cert. denied,* 393 U.S. 1040, 89 S.Ct. 667, 21 L.Ed.2d 589 (1969).

**9.** At the February 9, 2017 Motions Hearing, Samtani argues that LPD Morales caused officers, including the CBP officers, to throw Samtani into the rear seat of LPD vehicle unit 1291 having extreme heat, thereby constituting false imprisonment. *See, e.g., Sears, Roebuck & Co.,* 693 S.W.2d at 375 (Civil liability for false imprisonment attaches when: 1) there is a willful detention of a person; 2)

against the consent of the person detained; and 3) the detention is without the authority of law.).

**10.** The government's response (Dkt. No. 73) suggests that the six CBP officers may have been acting within the scope of their employment at the time of the incident. (*See id.* (Response to Samtani's Objections to Representation of Customs and Border Patrol Officers by United States Attorney's Office) at 3 (The "actions" of the CBP officers "reasonably appear to have been performed within the scope of the employees' employment.")). Therefore, the Court construes federal tort claims against the United States. 28 U.S.C. § 2679(d)(1).

**11.** While it appears that the government's response (Dkt. No. 73 at 3) suggests that the six CBP officers may have been acting within the scope of their employment, the response is not an unequivocal certification under the Westfall Act. *Counts v. Guevara,* 328 F.3d 212, 214 (5th Cir. 2003). Moreover, any official certification is subject to judicial review, and Samtani may rebut whether the officers were acting within the scope of their employment. *Id.*

Amendment; and cruel and unusual punishment under the Eighth Amendment.

■■■ Samtani, however, may not bring a *Bivens* claim against a federal contractor or an employee of a federal contractor. *See, e.g., Holz v. Terre Haute Reg'l Hosp.*, 123 Fed.Appx. 712, 713 (7th Cir. 2005) ("A *Bivens* claim cannot be brought against a private entity (or individual), even if it is a federal contractor."); *Yorzinski v. Imbert*, 39 F.Supp.3d 218, 222 (D. Conn. 2014) ("The [Supreme] Court [in *Minneci v. Pollard*, 565 U.S. 118, 132 S.Ct. 617, 181 L.Ed.2d 606 (2012) ] rejected the argument that private actors performing governmental functions should be considered federal agents for the purposes of *Bivens* liability."); *id.* ("There is no basis, therefore, for extending the application of *Bivens* to ... a private security guard [employed by a private subcontractor of the Federal Protective Service]."). To the extent that Vasquez is not a federal employee, Samtani may only bring state claims under the TTCA against FAS Vasquez for assault, false arrest, and false imprisonment.

Samtani's Complaint states facts sufficient to support either the former or latter set of claims. Specifically, Samtani alleges that several federal officers "ran towards the 300 block of Convent Avenue only to slam Plaintiff Luvi Samtani to the ground, using excessive force, emptied his pockets completely, emptied his wallet, took out all his credit cards, identification and cash, looked through his personal business information (business cards from his suppliers), snooped around, [and] tried to look through his cell phone records." (*Id.* at 10). Samtani claims that "it is clear that [he] was just taking a video, [and] then [came an] assault, false arrest, [and] unlawful search ... " at the hands of the federal officers. (*Id.*). Samtani further claims that "LPD Officer Juan Eduardo Morales AKA 'Big John' ... gave Samtani a bogus citation [for] 'Disorderly Conduct and Obscene Gesture.' " (*Id.*). Yet at no time, according to Samtani, did he display his middle finger or act in a disorderly manner. (*Id.*). In his sworn Motion for Summary Judgment, Samtani identifies Vasquez as the arresting officer who also tackled Samtani to the ground. (Dkt. No. 80 at 79). Further, Samtani implies that LPD Morales caused officers, including FAS Vasquez, to throw him into the rear seat of LPD unit 1291 having excessive heat.

For at least these reasons, Samtani alleges sufficient facts that give rise to Bivens claims against Vasquez for illegal search and seizure (false arrest or unlawful detainment) in violation of the Fourth Amendment; use of excessive force in seizing Samtani in violation of his Fourth Amendment rights; retaliation under the First Amendment; and cruel and unusual punishment under the Eighth Amendment. *See supra*, Section IV. Alternatively, Samtani alleges sufficient facts that give rise to claims against FAS Vasquez for assault, false arrest, and false imprisonment. *See, e.g.*, Tex. Penal Code § 22.01 (A person commits an assault if he "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."); *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985) (Civil liability for false arrest and false imprisonment attaches when: 1) there is a willful detention of the person; 2) against the consent of the party detained; and 3) the detention is without the authority of law.); *Miles v. State*, 194 S.W.3d 523, 527 (Tex. App.—Hous. [1 Dist.] 2006), aff'd, 241 S.W.3d 28 (Tex. Crim. App. 2007) ("A citizen's arrest must be supported by probable cause."); Tex. Penal Code § 9.51(a) (If an officer has probable cause, he is justified in using such force that he "reasonably believes is immediately necessary to

make an arrest or to prevent escape after the arrest.").

## CONCLUSION

For the foregoing reasons, the Court construes the above claims against nine (9) Defendants. Samtani may file objections to this Memorandum and Order within twenty-one (21) days thereof, i.e., September 6, 2017, if the Court has misconstrued or omitted any claims that he intended to raise. Defendants should not file any dispositive motions until after the Court holds a Status Conference on September 14, 2017, at 11:00 A.M., at which point the Court will issue new deadlines for outstanding discovery and dispositive motions.

The Court **DIRECTS** the Clerk to amend the caption as follows consistent with this Order: Manoj Ramchand Samtani, Plaintiff, vs. City of Laredo, LPD Officer Juan Eduardo Morales (in his individual capacity), CBP Officer Franco D. Borreca (in his individual and official capacity), CBP Officer Juan P. Cortinas (in his individual and official capacity), CBP Officer Yoel De Angel (in his individual and official capacity), CBP Officer Alexiz Gonzalez (in his individual and official capacity), CBP Officer Jorge Ruiz (in his individual and official capacity), CBP Officer Oscar Zenteno, Jr. (in his individual and official capacity), and FAS Officer Rey Vasquez, Defendants.

**IT IS SO ORDERED.**