# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-50839

United States Court of Appeals
Fifth Circuit

**FILED**

April 18, 2017

Lyle W. Cayce
Clerk

LIONEL ALEXANDER,

      Plaintiff - Appellant

v.

CITY OF ROUND ROCK, a Municipal Entity; OFFICER MARCIANO
GARZA, Individually and in His Official Capacity; SERGEANT GREG
BRUNSON, Individually and in His Official Capacity; SERGEANT
SAMPSON CONNELL, Individually and in His Official Capacity; OFFICER
TRACY STAGGS, Individually and in His Official Capacity; JOHN DOES,
City of Round Rock Police Officers, Individually and in Their Official
Capacity,

      Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, CLEMENT, and SOUTHWICK, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Officer Marciano Garza pulled over Lionel Alexander in a hotel parking
lot after observing what he perceived as suspicious activity. Alexander refused
to answer Garza's questions. After waiting for backup to arrive, Garza and
other officers forcibly removed Alexander from his car, handcuffed him, and
ultimately arrested him for resisting a search. Alexander sued the officers and
the city under 42 U.S.C. § 1983, alleging violations of his First, Fourth, Fifth,

No. 16-50839

and Fourteenth Amendment rights. The district court granted the officers' motion to dismiss all claims. Alexander appeals. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

I

We stress at the outset that, because this appeal is from a grant of a motion to dismiss, all of the following facts are drawn exclusively from the allegations in Alexander's complaint.

Alexander was staying at a hotel in Round Rock, Texas. At approximately 9:15 p.m. he returned to the hotel from a trip to the grocery store and saw a stray cat in the hotel parking lot. He stopped his car, exited, and peered into the grass near his vehicle looking for the cat, intending to feed it. He could not find the cat and so turned to get back into his car, planning to park it in a spot nearer his hotel room. Upon turning to reenter his car, he noticed a police car in the parking lot but, not knowing why the police car was there and assuming it was unrelated to him, Alexander got back in his vehicle and proceeded to drive toward his room.

While Alexander was moving his car, Garza, who was driving the police car in the parking lot, activated his emergency lights and pulled Alexander over. Garza approached Alexander's vehicle and told Alexander that he was curious as to what Alexander had been doing. Alexander gave Garza his driver's license and informed Garza that he would not answer any of the officer's questions. At this point, Garza radioed for backup, citing "noncompliance." While he was waiting for backup to arrive, Garza stood by the window of Alexander's car, told Alexander to keep his hands on the steering wheel, and continued to question him.

After some time, backup arrived in the form of Sergeant Greg Brunson, Sergeant Sampson Connell, Officer Tracy Staggs, and unidentified John Does (together with Garza, the "officers"). Garza then asked Alexander to exit his

car. Alexander responded by asking Garza why he wanted him to get out of the car, and Garza responded, "Because I asked you to." Alexander began to reply that he did not believe he was legally required to exit. Before he finished, Garza and the other officers pulled Alexander from the car and pinned him face down onto the ground. One officer pressed a boot or knee on the back of Alexander's neck as his face was "mashed into the concrete." Alexander felt at least three officers on top of his body, "manipulating his limbs and putting pressure on his torso, neck, and head."

The officers handcuffed Alexander and sat him on a curb. Garza asked Alexander, "[a]re you ready to talk to me now?" Alexander refused, using an unidentified expletive. The officers then shackled Alexander's legs. At some point, either during the forcible removal from his car or while he was on the curb, Alexander sustained "injuries to his body . . . including injuries to his mouth." He "sustained emotional and psychological injuries as well." Throughout this ordeal, Alexander did not physically resist the officers in any way.

Garza informed Alexander that he was under arrest "for uttering an expletive where the public could hear him, which [Garza] asserted was a violation of the [Texas] disorderly conduct statute." The officers then searched Alexander's person and vehicle, finding nothing illegal or suspicious. Alexander was placed handcuffed into the back of one of the officers' police cars and taken to the Round Rock police station. He was then transported to the Williamson County Jail, where he remained for approximately twenty hours. In his formal police report, Garza wrote that Alexander was arrested not for disorderly conduct, but for resisting a search in violation of Texas Penal Code ("TPC") § 38.03(a). Alexander was eventually released. No criminal charges were brought.

No. 16-50839

Alexander sued the City of Round Rock, Garza, and the other officers in federal district court, asserting claims under 42 U.S.C. § 1983 and various provisions of the Texas Constitution. Alexander argued, among other things, that: (1) there was no reasonable suspicion supporting his detention; (2) there was no probable cause supporting his arrest; (3) he was retaliated against for exercising his constitutional rights; and (4) the officers used excessive force when pulling him from his vehicle.[1] The officers moved to dismiss all claims, asserting that they were entitled to qualified immunity. The district court granted the officers' motion to dismiss, holding that, with regard to some of Alexander's claims, he had not alleged any violations of his constitutional rights, and with regard to the others, Alexander was unable to overcome the qualified immunity defense. Alexander now appeals.

II

We review "a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo," *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502 (5th Cir. 2014) (emphasis omitted), "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). Dismissal is appropriate only when a plaintiff has not alleged "enough facts to state a claim to relief that is plausible on its face" and has failed to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

When a government official asserts a qualified immunity defense, the burden is on the plaintiff to "show that he pleaded facts showing . . . that the official violated a statutory or constitutional right. If the plaintiff makes

---

[1] Alexander raised other arguments in the district court as well, but these four are the only contentions he presses on appeal. Furthermore, Alexander's briefing on appeal makes no argument regarding the culpability on the part of Round Rock itself. Consequently, Alexander has waived his appeal as to any claims against the City of Round Rock.

No. 16-50839

this . . . showing, then [we must] determine whether the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *United States ex rel Parikh v. Brown*, 587 F. App'x 123, 127–28 (5th Cir. 2014) (internal quotation marks, citations, and alteration omitted); *see also Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). When engaging in the qualified immunity analysis, we are "permitted to exercise [our] sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). We "review a grant of qualified immunity de novo." *Gonzalez v. Huerta*, 826 F.3d 854, 856 (5th Cir. 2016) (quoting *Bishop v. Arcuri*, 674 F.3d 456, 460 (5th Cir. 2012)).

## III

Alexander argues on appeal that Garza and the other officers are liable for: (1) unlawfully detaining him; (2) arresting him without probable cause; (3) retaliating against him for exercising his First and Fifth Amendment rights; and (4) using excessive force against him. We address each argument in turn.

### A.    Unlawful Detention

"Warrantless searches and seizures are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). The Supreme Court carved out one such narrow exception in *Terry v. Ohio*, 392 U.S. 1 (1968). "Under *Terry*, if a law enforcement officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime, the officer may briefly detain—that is, 'seize'—the person to investigate." *Hill*, 752 F.3d at 1033 (citing *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000)); *see also United States v.*

5

No. 16-50839

*Sanders*, 994 F.2d 200, 203 (5th Cir. 1993) ("[A]fter the Supreme Court's opinion in *Terry v. Ohio*, it is now axiomatic that the police are allowed to stop and briefly detain persons for investigative purposes if the police have a reasonable suspicion supported by articulable facts that criminal activity may be afoot.") (internal quotation marks and footnote omitted). "While 'reasonable suspicion' is a less demanding standard than probable cause . . . the Fourth Amendment requires at least a minimal level of objective justification for making the stop. The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Terry*, 392 U.S. at 27).

Both this court and the Supreme Court have dealt frequently with reasonable suspicion or its absence. The Supreme Court case with the most salience is *Wardlow*, in which the Court had to determine whether an individual who "fled upon seeing police officers patrolling an area known for heavy narcotics trafficking" had provided the police with reasonable suspicion to detain him. *Id.* at 121. The Court ultimately concluded that he had. *Id.* at 126. In so doing, it distinguished between "headlong flight . . . the consummate act of evasion" and the right of the individual to "ignore the police and go about his business." *Id.* at 124–25. "Nervous, evasive behavior [was] a pertinent factor in determining reasonable suspicion," *id.* at 124, but continuing to go about one's business was not.

Our circuit has further interpreted *Wardlow*; we held in *Hill* that *Wardlow* did not establish a "bright-line rule that flight by itself establishes reasonable suspicion." *Hill*, 752 F.3d at 1036. In *Hill*, police officers approached a car parked in an apartment complex; as they neared the car, the defendant's girlfriend "exited the car and moved towards the apartment building in a manner that officers said was 'quick,' 'brisk,' and 'hurrying.'" *Id.* We noted that

6

the girlfriend "*could* have exited the car out of a desire to flee the police; or, she could have simply exited the car because Hill drove her home, they finished saying their 'goodbyes,' and she was preparing to go inside." *Id.* at 1037. The officers "lacked a reasonable basis to infer much of anything about the girlfriend exiting the car and taking a few steps towards the apartment during the same time as their arrival." *Id.* In other words, circumstances that could equally be interpreted as flight from officers or as continuation of previously-undertaken actions do not create reasonable suspicion.[2]

We have identified additional factors for determining reasonable suspicion. An informant's tip is a factor weighing in favor. *See United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007) ("An informant's tip may, in certain cases, provide reasonable suspicion."). A suspect's presence in a high crime area is also relevant. *See, e.g.*, *United States v. Rideau*, 969 F.2d 1572, 1575 (5th Cir. 1992) (en banc). So too the time of day. *See id.*; *see also, e.g.*, *Hill*, 752 F.3d at 1036 (noting that the suspect was not doing anything "unusual for the . . . hour"); *United States v. Michelletti*, 13 F.3d 838, 845 (5th Cir. 1994) (en banc) (DeMoss, J., concurring) (noting that at 2 a.m. "the overwhelming majority of law-abiding citizens are at home in bed," unlike the defendant).

The district court concluded that Alexander failed to state a claim that Garza lacked reasonable suspicion to detain him. The district court did not provide great detail on what led to its conclusion, but it did hold that, "[b]ased on the totality of the circumstances alleged, Officer Garza had reasonable suspicion to stop Plaintiff and inquire as to why Plaintiff was peering into the grass in the dark and appeared to flee upon spotting the police car." In reaching

---

[2] We recognize that the alleged flight from officers in *Hill* was that of Hill's girlfriend, not Hill himself, whereas here the alleged flight from officers was Alexander's. Nevertheless, this is no reason to distinguish the cases entirely—as we noted in *Hill*, "the girlfriend's quick movements might reflect to some extent on Hill too." *Id.*

this conclusion, the district court erroneously failed to draw all inferences in favor of the nonmovant, i.e. Alexander. There is nothing in the complaint indicating whether the parking lot was dark or well-lit, for example. Nor is there any basis to conclude that Alexander appeared to flee—according to the complaint, he was already getting into the car before he looked up and noticed Garza's police vehicle.

Taking all of Alexander's well-pleaded allegations as true and drawing all inferences in his favor—as we must at this stage of the litigation—we cannot conclude as a matter of law that he has failed to state a Fourth Amendment claim for unlawful detention. According to Alexander's allegations, the most Garza could have observed was a man (Alexander) briefly looking around a vehicle in the parking lot, turning to get into a car, noticing a police car, continuing to get into the car, and beginning to drive further into the parking lot. This is not "headlong flight" as discussed in *Wardlow*; this is a man "go[ing] about his business." *Wardlow*, 528 U.S. at 125. It was not "evasive" behavior. *Id.* at 124. Garza had no prior tip or information that could have led him to suspect Alexander of criminal activity. *Cf. Martinez*, 486 F.3d at 861. This stop did not take place late at night; Garza pulled Alexander over at approximately 9:15 p.m., in a parking lot we are required to infer was well-lit. *Cf. Hill*, 752 F.3d at 1036; *Rideau*, 969 F.3d at 1575. Nor is there any suggestion in the complaint that this was a high crime area. *Cf. id.* Indeed, the circumstances in *Hill* were much more suspicious than they were here; in *Hill* it was a high crime area, later at night, and Hill's girlfriend actively altered her behavior to move away from police officers when they got near her, *Hill*, 752 F.3d at 1035–36, but we still did not find reasonable suspicion.

We do not suggest that officers in this circuit have faced this precise factual situation before. But that is not a condition precedent to denying qualified immunity—"officials can still be on notice that their conduct violates

established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Based on these facts alone, we cannot conclude as a matter of law that Garza had reasonable suspicion to detain Alexander pursuant to the Fourth Amendment. Moreover, taking the facts as alleged, the lack of reasonable suspicion was clearly established—the factors we laid out as relevant in *Hill*, *Martinez*, *Rideau*, and *Micheletti*, as well as the Supreme Court's decision in *Wardlow*, do not support reasonable suspicion here. We therefore reverse the district court's dismissal of Alexander's unlawful detention claim.

B.    Probable Cause

According to Garza's formal report, Alexander was ultimately arrested for resisting a search under TPC § 38.03(a). TPC § 38.03(a) provides that a person commits an offense "if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another *by using force against the peace officer or another*." (emphasis added). Texas courts have stressed that this section "applies only to resistance by the use of force." *Washington v. State*, 525 S.W.2d 189, 190 (Tex. Crim. App. 1975). Thus, under Texas law, simply "refusing to cooperate with being arrested" is *not* sufficient to support an arrest for resisting a search—there must be some use of force. *Sheehan v. State*, 201 S.W.3d 820, 823 (Tex. App.—Waco 2006); *see also Martin v. State*, No. 03-08-00400-CR, 2009 WL 1980951, at *4 (Tex. App.—Austin July 10, 2009) ("Non-cooperation with an arrest is not by itself an act of the 'use of force against' a peace officer under [TPC § 38.03(a)].") (Mem. Op., not designated for publication).

Here, Alexander alleges that at all times—while being removed from his car, manhandled on the concrete, handcuffed on the curb, and then placed in the police car—he was entirely passive and did not physically resist the officers

in any way. The district court nevertheless found that Garza's decision to arrest Alexander for resisting a search "was reasonable," especially "given [Alexander's] refusal to [answer] Officer Garza's questions, coupled with his questioning of Officer Garza's authority to direct [Alexander] to exit the vehicle." On these grounds, the district court held that the officers were entitled to qualified immunity and dismissed Alexander's claim for false arrest. At no point did the district court identify what allegations in the complaint supported a finding that Alexander had used force against the officers such that they could arrest him for resisting a search.

The only argument the officers make as to the use of force requirement under TPC § 38.03(a) is that, "to the extent that physical force is required to establish resisting arrest, or search, the use of a car as a barrier to avoid the efforts of an officer to conduct their search acts to constrain the search and may provide another building block of probable cause."[3] This argument both strains credulity and runs counter to Texas precedent on the issue. As noted above, Texas courts have repeatedly held that merely using tactics to delay an arrest *does not* satisfy TPC § 38.03(a)'s use of force requirement. *See Dobbs v. State*, 434 S.W.3d 166, 173 (Tex. Crim. App. 2014) (defendant who attempted to avoid

---

[3] For the first time in a Rule 28(j) supplemental letter the week of oral argument, counsel for the defendants argued that the officers had probable cause to arrest Alexander under a different provision of the TPC, namely, Section 38.15. It is true that a police officer is entitled to qualified immunity if he had probable cause to arrest the plaintiff for *any* crime—not just the crime that the officer stated at the time of arrest. *See Devenpeck v. Alford*, 543 U.S. 146 (2004). In stark contrast to the defendants here, however, appellees in previous cases applying *Devenpeck* in our circuit have pointed to alternative grounds supporting probable cause in their briefing to this court. *See, e.g., Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (defendant officers offered four alternative bases for arrest supported by probable cause). Were appellees under no obligation to raise such alternative grounds during briefing, this court would be put in the position of having to prove a negative—analyzing *every* criminal statute to be sure that no other plausible grounds for probable cause exist. There is nothing in *Devenpeck* or any of our precedents that requires such an absurd result. The defendants here did not point to Section 38.15 until after briefing was complete. Their contentions fail for that reason.

No. 16-50839

being arrested by putting a gun to his own head and threatening to commit suicide did not violate § 38.03 because, "although appellant's refusal to put down the gun when ordered to do so had the likely effect of delaying his arrest, that refusal [could not] reasonably be understood as constituting a use of force against the officers by virtue of its being opposed to the officer's goal of making an arrest"). On the facts alleged, there was no probable cause to arrest Alexander for resisting a search under Texas law.

The district court granted the officers qualified immunity from Alexander's false arrest claim. There can be no doubt that the right not to be arrested absent probable cause was clearly established at the time of Alexander's arrest. *See Club Retro,* 568 F.3d at 206 ("The Fourth Amendment right to be free from false arrest—arrest without probable cause—[is] clearly established . . . ."); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right."). "[E]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to" qualified immunity, however. *Club Retro*, 568 F.3d at 206 (internal quotation marks omitted) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)). We must therefore determine whether it was objectively reasonable for Garza and the officers to conclude that probable cause existed to arrest Alexander for resisting a search. "Objective reasonableness is assessed in light of legal rules clearly established at the time of the incident." *Mangieri*, 29 F.3d at 1016. The plain meaning of Section 38.03(a)'s text and the ample and longstanding Texas case law interpreting the statute's use of force element indicate that, absent some physical force directed at a law enforcement official, there can be no violation for resisting a search or arrest. It is telling that, in their brief, the defendants point to no Texas case interpreting the statute otherwise.

11

No. 16-50839

Because, on the facts alleged, the officers did not have probable cause to arrest Alexander for resisting a search under Texas law, and because no objectively reasonable officer would conclude that such probable cause did exist, we hold that: (1) Alexander has stated a Fourth Amendment claim; and (2) the officers are not entitled to qualified immunity from that claim at the motion to dismiss stage.

## C.   Retaliation

Alexander argues that the officers retaliated against him for exercising his constitutional rights (1) not to answer police questions during a *Terry* stop, and (2) to utter an expletive in public. He contends that the officers arrested him only because he exercised these rights, in violation of the First and Fifth Amendments. The district court held that Alexander's allegations were merely formulaic and conclusory and did not state a valid claim for retaliation under either the First or Fifth Amendments. It therefore did not reach the qualified immunity issue.

### 1.  Fifth Amendment

Alexander's argument that Garza and the officers retaliated against him for exercising his Fifth Amendment right not to answer Officer Garza's questions is easily disposed of. As this court has noted on multiple occasions, "[a]n individual's Fifth Amendment right against self-incrimination is implicated only during a custodial interrogation." *Murray v. Earle*, 405 F.3d 278, 286 (5th Cir. 2005) (internal quotation marks omitted); *see also United States v. Wright*, 777 F.3d 769, 777 (5th Cir. 2015) (same). Indeed, "[t]he Fifth Amendment privilege against self-incrimination is a fundamental trial right which can be violated only *at* trial." *Murray*, 405 F.3d at 285; *see also Winn v. New Orleans City*, 919 F. Supp. 2d 743, 752 (E.D. La. 2013) (same). In other words, the Fifth Amendment protects a defendant from being coerced into making an incriminating statement, and then having that statement used

No. 16-50839

against him at trial. But Alexander was never tried. His Fifth Amendment right against self-incrimination was not violated.[4]

### 2.  First Amendment

As the district court explained, "[t]o prevail on a First Amendment retaliation claim, Plaintiff must demonstrate that (1) he was engaged in constitutionally protected activity, (2) the officers' action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct." *Alexander v. City of Round Rock*, No. A-15-CA-00617-SS, 2016 WL 3360530, at *6 (W.D. Tex. June 14, 2016) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). Alexander argues that Garza and the officers retaliated against him for exercising his First Amendment right of free expression in two distinct ways: (1) using an expletive in public; and (2) being silent and not answering an officer's questions.

The claim that the officers retaliated against Alexander for using an expletive in public is not supported by the facts as alleged in the complaint. As the district court correctly explained, by the time Alexander used the expletive, he had already been removed from his car and handcuffed on the curbside. Furthermore, any adverse action that was taken once the arrest was effected cannot be reasonably attributed to Alexander's alleged use of an expletive, as Alexander was ultimately arrested for resisting a search and not for any unfortunate word choice. Thus, Alexander's First Amendment retaliation claim fails as far as his use of an expletive is concerned.

---

[4] The parties spill much ink on the issue of whether *Miranda* rights attach during non-custodial interrogations. That argument is a red herring in this case, because any incriminating statements Alexander might have theoretically uttered had he answered Garza's questions could not have been used against him in court anyway—there was no trial.

13

Alexander also argues that the officers retaliated against him for exercising his First Amendment right to be silent and not answer their questions. This argument was not addressed straight-on by the district court. We hold that Alexander's claim on this point cannot overcome the officers' qualified immunity, because "it was not clearly established that an individual has a First Amendment right to refuse to answer an officer's questions during a *Terry* stop." *Koch v. City of Del City*, 660 F.3d 1228, 1244 (10th Cir. 2011).[5] Surprisingly few courts have ruled on this precise issue; the parties point to no cases from this circuit directly on point. The sparse case law that does exist, however, indicates no consensus that a defendant has a First Amendment right not to answer an officer's questions during a stop like the one at issue here. One court summarized the issue well:

> Plaintiffs contend that they can state such a First Amendment retaliation claim because Defendants retaliated against them for exercising their right not to speak. . . . However, this right not to speak has been limited to the context of government-compelled speech with respect to a particular political or ideological message. *See United States v. Sindel*, 53 F.3d 874, 878 (8th Cir. 1995)[;] . . . *Kania v. Fordham*, 702 F.2d 475, 478 n. 6 (4th Cir. 1983). Plaintiffs cite no authority to support the application of the First Amendment protection against government-compelled ideological or political speech into the context of police interviews . . . .

*McFayden v. Duke Univ.*, 786 F. Supp. 2d 887, 949 (M.D.N.C. 2011) (internal quotation marks omitted), *aff'd in part, rev'd in part on other grounds sub nom. Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012). It is instructive that Alexander points to no case supporting the contention that there is a clearly established First Amendment right not to answer an officer's questions during

---

[5] Because we conclude that Alexander cannot overcome the officers' qualified immunity on this claim, we do not rule as to whether he stated a First Amendment retaliation claim in the first instance.

a traffic stop. We therefore conclude that the officers are entitled to qualified immunity on Alexander's First Amendment retaliation claim.

D.     Excessive Force

Alexander alleges that the officers used excessive force in violation of his Fourth Amendment rights when they "mashed" his face "into the concrete," "pinned him by pressing [a] boot or knee on the back of his neck," and "manipulate[ed] his limbs and put[] pressure on his torso, neck, and head." Alexander further alleges that, as a result, he "sustained injuries to his body as a result of this attack, including injuries to his mouth." He also alleges that he "sustained emotional and psychological injuries as well." The district court found that Alexander did not plead his injuries with enough specificity to overcome the *de minimis* requirement.

We disagree. "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (quoting *Ikerd v. Blair,* 101 F.3d 430, 434–35 (5th Cir. 1996)). "*Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* (emphasis added) (footnote omitted). Consequently, "only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment." *Ikerd,* 101 F.3d at 434 n.9. In short, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Brown*, 524 F. App'x at 79 (footnotes omitted) (quoting *Ikerd*, 101 F.3d at 434).

On the facts alleged, we conclude that the officers' use of force was objectively unreasonable. Nothing in Alexander's statements or actions

indicated that he posed any risk of harm to the officers. Nor did he pose any flight risk—indeed, he stayed in his vehicle and made no attempt to leave while Garza awaited backup. Perhaps Alexander's refusal to exit his vehicle on Garza's command warranted physical removal from the car, but it did not warrant throwing Alexander onto the ground, kneeing him in the back, and pushing his face into the concrete. The officers' use of force once Alexander was safely removed from the vehicle was not objectively reasonable. Consequently, Alexander's alleged injuries—though perhaps not sufficient on their own to satisfy the *de minimis* requirement—are enough to support a claim for excessive force at the motion to dismiss stage.

IV

We have only heard one side of the story. After discovery is complete, the district court may well correctly determine that none of Alexander's claims can survive summary judgment. But at the motion to dismiss stage, we are bound to accept his allegations as true. And on the facts alleged, Alexander has stated several constitutional claims.

We (1) REVERSE the district court's dismissal of Alexander's unlawful detention claim, (2) REVERSE the district court's dismissal of Alexander's false arrest claim, (3) AFFIRM the district court's dismissal of Alexander's retaliation claims, and (4) REVERSE the district court's dismissal of Alexander's excessive force claim. We REMAND for further proceedings as appropriate. We place no limitation on the matters the district court may address and decide on remand.