# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 27, 2018

Lyle W. Cayce
Clerk

No. 17-11095

ROBBY JOE TREVINO, Individually, and as Personal Representatives of the
Estate of Alisha Trevino, and as next friend of A.N., a minor; LAURIE DALE
REED, Individually, and as Personal Representatives of the Estate of Alisha
Trevino, and as next friend of A.N., a minor,

> Plaintiffs - Appellants

v.

JACOB S. HINZ, Fort Worth Police Officer; THOMAS HAUCK, Fort Worth
Police Officer,

> Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:17-CV-227

Before HAYNES, HO, and DUNCAN, Circuit Judges.

PER CURIAM:*

Alisha Trevino ("Trevino") died after she surreptitiously ingested
methamphetamine hidden in her pants while sitting in a patrol car during a
traffic stop. Members of Trevino's family (collectively, "Plaintiffs") sued several

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 17-11095

Fort Worth police officers involved in the stop in their individual capacities under 42 U.S.C. § 1983, alleging the officers were deliberately indifferent to Trevino's serious medical needs by not calling an ambulance sooner after observing Trevino's symptoms. The district court granted the officers' motions to dismiss based on qualified immunity. Plaintiffs appeal only as to Officers Jacob Hinz and Thomas Hauck. We AFFIRM.

## I.

Plaintiffs allege[1] that on April 15, 2015, at approximately 8:07 p.m., Fort Worth police officers stopped Alfredo Cortez and his girlfriend Alisha Trevino for an inoperable brake light, after receiving a tip from a confidential informant that the couple was carrying methamphetamine. Before officers approached the vehicle, Cortez saw Trevino shove a baggie of methamphetamine into her pants. None of the officers saw this.

Officers arrested Cortez based on an outstanding warrant, and they sat Trevino on the curb. Officer Hauck recognized Trevino from a 2013 arrest in which methamphetamine was found hidden in her anus, and so he asked Trevino if she was hiding anything on her person. Trevino denied that she was. Claiming she was cold, Trevino was allowed to sit unhandcuffed in the back of a patrol car belonging to Officers D. Koplin and Chris McAnulty. Officer Koplin monitored her carefully to make sure she did not conceal anything on her person. At one point, however, he left Trevino unmonitored for a "couple minutes" while he helped another officer search the vehicle. When that search revealed a large amount of methamphetamine in a woman's purse, Officer

---

[1] We refer to the allegations in Plaintiffs' first amended complaint. That complaint incorporates information from a Fort Worth Police Department investigative report, which Plaintiffs attached to the amended complaint. For purposes of our ruling, we refer only to information from the investigative report that Plaintiffs made a part of their allegations. *See, e.g., Alexander v. City of Round Rock*, 854 F.3d 298, 301 (5th Cir. 2017) (on review of granted motion to dismiss, considering facts "drawn exclusively" from allegations in complaint).

No. 17-11095

Matthew McMeans and Sergeant Sean LaCroix took Trevino to another car for questioning. Trevino refused to say anything. Officer Hinz then handcuffed Trevino and seated her in the original patrol car, while Officer Koplin sat in the front seat and completed paperwork.

Not long after that, Trevino began showing signs of illness such as dry heaving, a small amount of vomiting, and shaking. Various officers asked her whether she had medical issues, had ingested drugs, or wanted an ambulance. Trevino denied ingesting drugs and did not ask for an ambulance, but she did claim to be having a seizure. Initially, however, the officers doubted she was really having seizures—especially given that Trevino was still able to converse with them—and suspected she was faking illness to avoid jail. For instance, some 10-15 minutes after Trevino first vomited, Officer Hauck (according to Plaintiffs' own allegations) "went to check on Trevino and saw her rocking back and forth and coughing, but she seemed to be breathing fine and talking with officers." Similarly, somewhat later Officer Hinz observed Trevino shaking and moving her hips up and down, but he could not tell whether these symptoms were genuine or whether "she was just trying to get out of jail."

When it became clear that Trevino was in real distress, Officer Hinz placed her in the recovery position on her side, noticing the presence of spit or foam on her mouth. One of the officers called an ambulance at this point, around 10:30 p.m. The paramedic reported she received a priority three call (meaning no sirens or lights needed) for a woman with breathing problems. The ambulance arrived about 15 minutes later. Paramedics put Trevino on a stretcher, noting she was unresponsive, barely breathing, foaming at the mouth and nose, had unreactive pupils, and appeared to have had a seizure because her jaw would not open. The paramedic asked the officers if Trevino had been left unsupervised so to have an opportunity to ingest drugs, and they reluctantly confirmed she had been unsupervised at one point. Trevino went

3

No. 17-11095

into cardiac arrest during transport to the hospital. Doctors revived her at the hospital, but she had brain damage from lack of oxygen and died upon removal of life support. An autopsy found two baggies of methamphetamine in her stomach.

Plaintiffs sued the officers in their individual capacities under 42 U.S.C. § 1983 for deliberate indifference to Trevino's medical needs in violation of the Fourteenth Amendment. The officers moved to dismiss based on failure to state a claim and qualified immunity. The district court granted the officers' motions to dismiss based on qualified immunity, holding that Plaintiffs' allegations failed to show that any officers were deliberately indifferent to Trevino's medical needs nor that any officers violated clearly established law at the time of the incident. Plaintiffs appealed only as to Officers Hauck and Hinz.

II.

We review *de novo* a district court's grant of a motion to dismiss based on qualified immunity, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). Evaluating whether an officer is entitled to qualified immunity involves a two-step analysis. First, "the burden is on the plaintiff to show that he pleaded facts showing … that the official violated a statutory or constitutional right." *Alexander v. City of Round Rock*, 854 F.3d 298, 303 (5th Cir. 2017) (internal quotations and citation omitted). Second, if the plaintiff makes that showing, we "determine whether the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* We have discretion to base our decision on either prong. *See Pearson v. Callahan*, 555 U.S. 223, 236-45 (2009).

As to the first prong—whether the pled facts show a constitutional violation—Plaintiffs allege that Officers Hinz and Hauck were deliberately indifferent to Trevino's medical needs by failing to timely call an ambulance.

4

No. 17-11095

The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 457 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). A plaintiff must prove "(1) that each defendant had subjective knowledge of 'facts from which an inference of substantial risk of serious harm could be drawn,' (2) that each defendant actually drew that inference; and (3) that each defendant's response to the risk indicates that [he] 'subjectively intended that harm occur.'" *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (quoting *Thompson*, 245 F.3d at 458–59).

We doubt that Plaintiffs have alleged facts giving rise to deliberate indifference as to Officers Hauck and Hinz. Even read favorably to Plaintiffs, their allegations may depict negligence on the officers' part in not initially realizing the gravity of Trevino's condition and in not calling an ambulance sooner. But negligent or even grossly negligent conduct does not rise to the level of deliberate indifference. *Thompson*, 245 at 458–59 (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 645, 649 (5th Cir. 1996) (en banc)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference[.]" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).[2] We need not ultimately decide this question, however, because—even if deliberate indifference has been alleged and even construing

---

[2] *See also, e.g., Hartzog v. Hackett*, 711 F. App'x 235 (5th Cir. 2018) (unpublished) (holding that while "the facts presented could support a conclusion that the Deputies were negligent in their treatment of [a detainee]" when they did not seek medical attention for him, their "action, or inaction, d[id] not rise to the very high standard required to indicate deliberate indifference"); *Stewart v. Murphy*, 174 F.3d 530 (5th Cir. 1999) (holding that a prison physician's failure to transfer an inmate to another facility for physical therapy for his bedsores (from which he later died), failure to read the nurses' notes indicating that inmate had an infection, and failure to give the inmate antibiotics, "might constitute negligence, not the requisite deliberate indifference").

the facts in the light most favorable to the Plaintiffs—as explained below Plaintiffs fail to show the officers' conduct was objectively unreasonable. *See, e.g., Pearson*, 555 U.S. at 238-39 (courts may pretermit first prong "[w]hen qualified immunity is asserted at the pleading stage, [because] the precise factual basis for the plaintiff's claim or claims may be hard to identify") (citations omitted) (brackets added).

As to the second prong, Plaintiffs must show that Officer Hauck's and Officer Hinz' conduct was objectively unreasonable in light of clearly established law. "To be clearly established, a right must be sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (brackets omitted)). While plaintiffs need not identify a case "directly on point," nonetheless "'existing precedent must have placed the statutory or constitutional question *beyond debate*.'" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (emphasis in original). The critical consideration is "fair warning": the specific right must have been "defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct.'" *Morgan*, 659 F.3d at 372 (internal quotes and citations omitted). Therefore, plaintiffs must identify "controlling authority— or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan*, 659 F.3d at 371-72 (citing *al-Kidd*, 563 U.S. at 742) (internal quotes omitted). Plaintiffs have not met this burden for two reasons.

First, Plaintiffs identify no Supreme Court or Fifth Circuit case that would have notified Officer Hauck or Officer Hinz that their conduct clearly constituted deliberate indifference. "That alone dooms [their] case here." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018) (citing *Cass v.*

*City of Abilene*, 814 F.3d 721, 732-33 (5th Cir. 2016)). Instead, they cite only a handful of Eighth Circuit decisions. But even assuming a few decisions from one sister circuit could constitute a "robust consensus of persuasive authority" clearly establishing a specific legal principle, the decisions Plaintiffs cite fail to do so.[3] *Cf. Morgan*, 659 F.3d at 382 & n.101 (indicating that one analogous decision from the Seventh Circuit "is far from the robust consensus of persuasive authority needed to clearly establish the law") (internal quotes and citation omitted).

Second, our own cases suggest, contrary to Plaintiffs' position, that an officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference. For instance, in *Tamez v. Manthey*, 589 F.3d 764, unbeknownst to detectives an arrestee had, before his arrest, swallowed a baggie of cocaine that later burst. Despite the facts that

---

[3] At most, the cited Eighth Circuit cases (which construe the Eighth Amendment) establish the proposition that law enforcement officials show deliberate indifference by intentionally delaying medical treatment of an inmate whom they *know* suffers from a specific condition (like heart disease) and who is exhibiting symptoms of that condition. *See, e.g., Gordon ex rel. Gordon v. Frank,* 454 F.3d 858, 862-63 (8th Cir. 2006) (fact issues precluded qualified immunity on deliberate indifference claim where inmate was on high observation for medical problems, told officers he had heart disease, complained of chest pain and difficulty breathing, and repeatedly asked for medical help); *Plemmons v. Roberts*, 439 F.3d 818, 824 (8th Cir. 2006) (same, where inmate told officer he had heart disease, exhibited classic heart attack symptoms, and asked for an ambulance). But those sister circuit decisions—even assuming they could clearly establish law in our circuit—do not clearly establish the proposition that officials facing a detainee's ambiguous medical symptoms in the situation presented here (*i.e.*, where a detainee has surreptitiously ingested drugs) show deliberate indifference by delaying calling an ambulance until the gravity of the symptoms becomes clearer. Indeed, one of Plaintiffs' cited cases, *Ruark v. Drury*, 21 F.3d 213, 216-17 (8th Cir. 1994), supports the proposition that, where an inmate exhibits ambiguous symptoms of medical distress (like difficulty waking and labored breathing), officials' 20-minute delay in calling an ambulance did not constitute "wanton" behavior for Eighth Amendment purposes when the inmate later died of a drug overdose en route to the hospital. Furthermore, Plaintiffs' Eighth Circuit cases also recognize the proposition that officials retain qualified immunity even if they reasonably misunderstand facts and "'assess the legality of [their] conduct based on that misunderstanding.'" *Gordon*, 454 F.3d at 864 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)) (and collecting cases).

the detectives observed Tamez had maximally dilated pupils and that a nurse suggested Tamez needed medical treatment before going to jail, detectives did not seek immediate medical help. Affirming summary judgment for the detectives, we explained that "[b]ecause pupil dilation can mean 'a lot of things,'" it did not show that detectives "were aware of an unjustifiably high risk to Tamez's health, nor … show that the risk to Tamez's health was so obvious that they should have inferred such a risk." *Id.* at 771. Similarly, in *Estate of Allison v. Wansley*, 524 F. App'x 963 (5th Cir. 2013) (unpublished), we held that officers' actions were objectively reasonable where they knew a woman in custody (who later died of ethanol poisoning) "was very intoxicated, had taken prescription drugs not in accordance with directions, and had attempted to commit suicide using pills a year earlier" but nonetheless allowed her to "sleep it off" while checking on her periodically. *Id.* at 972. The woman was unsteady, slurred her speech, and told officers she had abused prescription drugs. Yet the officers believed her symptoms were consistent with intoxication and did not believe she was having a medical emergency. *Id.*

In light of decisions like *Tamez* and *Estate of Allison*—and given the lack of any controlling authority clearly pointing the other way—we cannot say that Officer Hauck and Officer Hinz acted in an objectively unreasonable manner by not calling an ambulance earlier. Plaintiffs' own allegations show that Trevino's symptoms were initially ambiguous, and that Officers Hauck and Hinz were therefore not unreasonable in believing she did not require immediate medical attention. Trevino vomited, had several shaking episodes, and told the officers she was sick. None of these symptoms clearly indicated Trevino was undergoing an emergency necessitating immediate medical attention. As the district court noted, "[a]s a matter of common sense, vomiting does not always indicate medical distress in the sense that it requires immediate medical attention." *Trevino v. City of Fort Worth*, No. 4:17-CV-227-

A, 2017 WL 3704511, at *5 (N.D. Tex. Aug. 25, 2017). Similarly, although shaking episodes can signify a seizure, Officers Hauck and Hinz believed that since Trevino continued conversing with officers, she was not having a seizure. Furthermore, neither officer had any way of knowing that Trevino had ingested drugs while in the patrol car (Trevino had done this surreptitiously, of course) nor that she had even had the opportunity to do so (the allegations do not reflect that Hauck or Hinz knew that Trevino had been unsupervised for a short time in the patrol car). The officers were therefore justified in questioning, at least initially, whether Trevino's symptoms were genuine. When it became apparent Trevino needed medical attention, an ambulance was called.

In sum, even viewing the allegations most favorably to the Plaintiffs as we must, we conclude that the officers' conduct was not objectively unreasonable in light of clearly established law and that the district court therefore correctly dismissed Plaintiffs' deliberate indifference claims against them on the basis of qualified immunity.

AFFIRMED.