# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2021

Lyle W. Cayce
Clerk

No. 19-30243

Jason Hinson,

*Plaintiff—Appellee*,

*versus*

Kyle Martin,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-260

Before Owen, *Chief Judge*, and Clement and Higginson, *Circuit Judges*.

Per Curiam:[*]

Jason Hinson was injured when his attempt to flee from police was abruptly thwarted by a police K9 named "Rex." Proceeding pro se, he sued the dog's handler, DeSoto Parish Sherriff's Deputy Kyle Martin, under 42 U.S.C. § 1983 for violating his Fourth and Eighth Amendment rights by

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-30243

applying excessive force during his arrest. Martin's motion for summary judgment on the basis of qualified immunity was denied, and he timely filed this appeal. We now AFFIRM in part and REVERSE in part.

## I. Facts and Proceedings

In February 2016, DeSoto Parish Sheriff's Deputies, including Martin, were informed that Hinson was wanted on a felony arrest warrant for armed robbery involving a firearm. He was presumed armed and dangerous, according to the warrant; a Crime Stoppers tip also indicated that he was likely armed. The tip described his vehicle and indicated that he was likely traveling with his pregnant girlfriend, Krystal Grigg. Martin spotted the vehicle, identified the driver as Hinson, and pursued. Hinson initially accelerated his vehicle to flee, but then pulled over and fled on foot into a wooded area. Martin deployed Rex, and both pursued Hinson into the woods. After approximately 200 yards, Rex caught Hinson by the arm and took him to the ground.

What happened next is a matter of factual dispute. According to Martin, Rex bit Hinson's right forearm, held on, and thereby took him to the ground. Although Martin could see that Rex had hold of Hinson's right arm, he could not see Hinson's left arm. Instead of calling Rex off Hinson, Martin drew his handgun and "held cover on Hinson" until a backup officer could assist him in handcuffing and securing Hinson. As soon as backup arrived, Martin removed Rex from Hinson's arm, and Hinson was handcuffed and taken into custody without further incident or application of force.

According to Hinson, however, Rex initially bit him on the *wrist*, at which point he voluntary went to the ground with the canine. Hinson alleges he ceased any attempts to escape or resist and submitted to commands from that point on. Nonetheless, Martin cursed at him, hit Rex, and gave Rex a command that caused Rex to bite Hinson several more times on the upper

No. 19-30243

arm. Both while Hinson was being handcuffed and after, deputies, including Martin, kicked him in the ribs. While Hinson lay handcuffed on the ground, subdued and compliant, Martin yanked on Rex's choke chain, causing Rex to once again bite down on Hinson's forearm and not let go. The biting stopped only when another deputy said, "he's had enough," causing Martin to remove Rex from Hinson's arm.

Hinson sued Martin and DeSoto Sheriff Rodney Arbuckle, requesting both monetary damages and injunctive relief (Martin's removal from the force). The district court dismissed all claims against Arbuckle, the claim for injunctive relief, and an unlawful search and seizure claim, but did not dismiss the Fourth or Eighth Amendment claims against Martin. Arguing that Hinson had not produced evidence to substantiate any alleged bite but the first, and that the first bite was clearly justified to apprehend a fleeing felony suspect who was presumed armed and dangerous, Martin moved for summary judgment on the grounds of qualified immunity. The magistrate judge recommended denying the motion in its entirety, and the district court adopted the recommendation. Martin timely filed this interlocutory appeal.

## II. Standard of Review

This appeal is taken under the collateral order doctrine, which permits denial of a motion for summary judgment on the basis of qualified immunity to be appealed immediately as a final decision under 28 U.S.C. § 1291.[1] *See*

---

[1] We note that Martin also appeals the district court's decision to treat Hinson's references to state court claims in his response to Martin's motion for summary judgment as a motion to amend the pleadings under Fed. R. Civ. P. 15(a) and to grant such motion. Under the circumstances, we have no jurisdiction to review this decision. It is not a final order, nor is it an unappealable order so "inextricably intertwined with" or "necessary to ensure meaningful review of the appealable order" as to justify pendant appellate jurisdiction. *Wallace v. Cnty. of Comal*, 400 F.3d 284, 291–92 (5th Cir. 2005) (quoting *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998)).

*Mitchell v. Forsyth*, 472 U.S. 511, 524–30 (1985). We begin by examining the scope of our jurisdiction over this appeal, which is limited to questions of law, and does not extend to questions of fact. *Winfrey v. Pikett*, 872 F.3d 640, 643 (5th Cir. 2017) ("The district court's denial of summary judgment is immediately appealable 'to the extent it turns on an issue of law.' (quoting *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010)). "[W]e cannot review a district court's conclusions that a genuine issue of fact exists concerning whether a defendant engaged in certain conduct." *Walsh v. Hodge*, 975 F.3d 475, 481 (5th Cir. 2020). In short, where the district court has held that there is a genuine dispute of material fact, "we have jurisdiction to review the materiality of any factual disputes, but not their genuineness." *Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018) (quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (internal quotation omitted)).

Martin's appeal largely turns on a factual dispute—whether Rex bit Hinson more than once, especially whether Martin caused Rex to bite Hinson after Hinson had been subdued and handcuffed and no longer posed a threat. Martin argues Hinson has failed to support his version of events, and that the record, on the whole, "blatantly contradicts Hinson's story such that it should not be considered at all." Martin invokes the Supreme Court's guidance in *Scott v. Harris* that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380 (2007).

The *Scott* Court's permissive approach to some questions about the genuineness of a factual dispute (those involving video footage that blatantly contradicts one party's version of events) does not easily square with the ruling in *Johnson v. Jones* that "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order

insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." 515 U.S. 304, 319–20 (1995). At least one other panel of this court, in a non-precedential opinion, explained how, "[j]uridictionally speaking, *Scott* is problematic, as deciding whose version of the facts must be accepted falls squarely within the realm of a dispute as to genuineness," even where the decision is made relatively easy by video footage. *Fuentes v. Riggle*, 611 F. App'x 183, 190 (5th Cir. 2015) (per curiam).

Fortunately, like the *Fuentes* court, we "need not pass on whether or to what extent such an exception [to *Johnson*] exists, as *Scott* is plainly inapplicable here." *Id*. at 191. There is no video footage plainly contradicting one party's version of events. Photos that Martin claims clearly depict only a single bite are far from dispositive. Hinson's wrist (where he claims Rex landed the bite that took him to the ground) is obscured by a bloody rag. Hinson's upper arm (where Martin claims Rex landed the pursuit-ending bite, but where Hinson claims Rex bit him after he was handcuffed) shows evidence of substantial injury, but not with such clarity that we can count the number of tooth imprints and rule out a second or third bite. Further, contrary to Martin's assertion, Hinson's medical records and the deposition of the doctor who treated him are not so clear as to implicate *Scott*.[2] The district court also had before it not only Hinson's sworn affidavit, but also Grigg's sworn affidavit. She was in the car when Hinson tried to flee from police; she saw Hinson as he was led out of the woods in handcuffs. She swears in her affidavit that she "observed multiple dog bite injuries to Mr. Hinson's wrist and forearm areas."

---

[2] Hinson's treating physician, for example, explained in his deposition, when asked which version of facts was true, that: "It's hard to tell. You know, dogs have a lot of teeth, so it's hard to see, tell, you know, how many times he was bit."

We need not—indeed, may not—opine on whether we would have found such evidence sufficient to create a genuine issue of material fact had we sat in the district court's place. Rather, we merely acknowledge that this case does not present the sort of "visible fiction" the Supreme Court directed appellate courts to ignore in *Scott*. 550 U.S. at 380–81.

In short, because the *Johnson* doctrine applies, "we are required to accept the truth of the plaintiff['s] summary judgment evidence, and we lack jurisdiction to review the genuineness of those factual disputes that precluded summary judgment in the district court." *Kinney v. Weaver*, 367 F.3d 337, 341 (5th Cir. 2004) (en banc). We are limited to reviewing whether the facts, as Hinson presents them, can overcome Martin's claim of qualified immunity, which is a question of law that we review de novo. *Cooper*, 844 F.3d at 522.

## III. Discussion

Because we have no jurisdiction to review the genuineness of factual disputes, our review is limited to whether Martin is entitled to qualified immunity under Hinson's version of the facts. Unfortunately for Martin, his appeal relies almost entirely on contesting the genuineness of the factual dispute. Because we must accept as true Hinson's allegation that he suffered multiple bites, including after he was subdued, handcuffed, and compliant, we will evaluate whether Martin is entitled to qualified immunity based on the facts as Hinson presents them. Martin justifiably asks us to consider Hinson's claims individually, separating Fourth Amendment claims from Eighth Amendment claims and claims related to events that took place during Hinson's apprehension from those that took place after he was subdued.

To overcome an official's claim of qualified immunity, a plaintiff must be able to prove "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time

of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation omitted). We may address these two prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Qualified immunity shields from liability all but the plainly incompetent or those who knowingly violate the law. Accordingly, qualified immunity represents the norm, and courts should deny a defendant immunity only in rare circumstances." *Angulo v. Brown*, 978 F.3d 942, 948–49 (5th Cir. 2020) (Clement, J.) (internal quotations omitted) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (Clement, J.)).

A.

We begin with the relatively simple point that Hinson's claims are properly characterized as arising under the Fourth Amendment, not the Eighth Amendment. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 394 ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ."). Hinson's claims arise entirely from the allegation that he was subject to excessive force during arrest, which amounts to an unreasonable seizure under the Fourth Amendment. The magistrate judge acknowledged this, but nonetheless recommended a blanket denial of Martin's summary judgment motion. Martin claims this is error; Hinson did not brief this argument.

We agree that Hinson's claims sound in the Fourth Amendment, and he has failed to state an Eighth Amendment violation. Hinson has therefore failed to overcome Martin's claim of qualified immunity at the first prong, so Martin is entitled to qualified immunity. The district court erred by denying summary judgment on Hinson's Eighth Amendment claim.

## B.

We turn next to Hinson's Fourth Amendment claims. Hinson is proceeding pro se, and his claims are not neatly divided. Construing his pleadings generously, he appears to argue that Martin used excessive force both, initially, by using Rex to apprehend him and, subsequently, by causing Rex to continue biting him after he was subdued, including after he was handcuffed. Hinson also alleges that Martin kicked him after he was handcuffed. We first consider the force applied to stop Hinson's flight from police, including the initial bite that brought Hinson to the ground.

To overcome Martin's qualified immunity defense on the excessive force claims, Hinson "must show '(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)). The *Graham* Court counseled that the reasonableness of force may be evaluated by looking to factors including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. We must be careful to judge the reasonableness of a use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* All factors favor Martin.

This court explained in a similar case that driving under the influence is a serious offense, and "[i]f DUI is serious, then *a fortiori* so is felony assault." *Escobar*, 895 F.3d at 394. Similarly, a violent felony like armed robbery is certainly at least as serious (if not clearly more so) than DUI. The first factor favors Martin.

No. 19-30243

The second factor, at least through the initial bite and takedown, also favors Martin. Although Hinson argues that he was, in fact, unarmed and that Grigg had informed officers that Hinson was unarmed as they exited their vehicles and began their pursuit on foot, Martin had a reasonable basis for his belief that Hinson should nonetheless be treated as armed and dangerous. Hinson was suspected of a crime involving a firearm, he was presumed armed and dangerous according to the warrant, the Crime Stoppers tip Martin had received indicated that Hinson was armed, and Martin was under no obligation to blindly accept Grigg's bare assertion that her boyfriend (and father of her unborn child) was unarmed. In other words, Martin reasonably believed he was chasing an armed and dangerous fugitive suspected of a violent felony through a wooded area, near residences. Martin had adequate cause to believe Hinson posed a substantial threat to himself, his fellow officers, and bystanders. The second factor favors Martin.

Finally, as Hinson admits and Grigg confirms, Hinson was actively fleeing from police when Martin used Rex to apprehend him. He had attempted to evade capture in his vehicle, and subsequently fled on foot into a wooded area. The third factor favors Martin.

Hinson was suspected of a violent felony involving a firearm, was presumed to be armed and dangerous, and was fleeing through a wooded area where officers could not see him. It was objectively reasonable for Martin to deploy Rex to conclude Hinson's evasion. Hinson has therefore failed to establish that Martin violated his Fourth Amendment rights by using Rex to apprehend him, and the district court erred by denying Martin summary judgment based on qualified immunity as to Hinson's claims insofar as they are based on the initial dog bite that brought him to the ground.

No. 19-30243

## C.

Hinson alleges, however—and we must accept for the purpose of this appeal—that Martin's use of force did not cease once Hinson was subdued. Instead, Martin ordered Rex to release Hinson and bite him again, including after Hinson was handcuffed. Hinson also alleges that Martin kicked him, including after he was handcuffed. Merely because a use of force was reasonable at the outset of an apprehension does not mean that the *continued* use of force *remains* reasonable. We must therefore turn to Martin's alleged use of force after Hinson had been subdued.[3]

The first *Graham* factor (severity of the crime) is unchanged by the fact that Hinson had been subdued and handcuffed—he was still being apprehended for the serious crime of armed robbery. However, at that point, he was no longer fleeing or offering active resistance. He was obeying officer commands and, particularly once handcuffed, could not reasonably be believed to pose a continuing threat to officers that would justify superfluous dog bites. Because Martin maintains that there was only a single bite (and relies almost exclusively on appeal on the argument that the district court erred by finding a genuine issue of material fact as to whether there were subsequent bites—a claim we have no jurisdiction to evaluate), he offers no explanation that could justify ordering Rex to bite Hinson after Hinson was subdued. The second and third *Graham* factors therefore indicate that

---

[3] We refer broadly to the time "after Hinson had been subdued" because the facts are underdeveloped. Hinson alleges, for example, that he was subdued and compliant, but not yet handcuffed, when Martin unnecessarily ordered Rex to bite Hinson a second time. Martin does not address this allegation or offer any argument in the alternative that could justify a second bite. We have no basis in the record to define the precise point at which Hinson should be considered to have been fully subdued, so we decline to further divide Hinson's claims into the bite that arrested his flight, bite(s) after he was subdued, but before he was handcuffed, and bite(s) after he was handcuffed.

No. 19-30243

Martin's alleged decision to order Rex to bite Hinson and to personally kick Hinson in the ribs after he was subdued was objectively unreasonable. This court has also held in the past that "permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable." *Cooper*, 844 F.3d at 524. Hinson has overcome the first prong of the qualified immunity analysis by showing facts to support his Fourth Amendment claim that his rights were violated when he was subjected to excessive force.

Martin argues that Hinson has failed to show the injury prong of an excessive force claim because he has only put forth evidence of a single bite. This argument is unavailing. Hinson argues that the initial bite that took him down (the *reasonable* application of force) was to his wrist, and that subsequent bites were to his upper arm. Regardless of whether Hinson has successfully shown that his wrist was injured, he has clearly shown that his forearm was. The photos Martin points to show substantial damage to the upper forearm, as do all of the medical records. The subsequent bites to the forearm clearly caused significant injury.

As to the kicks, although the injury caused by allegedly excessive force "must be more than *de minimis*," *Hanks v. Rogers*, 853 F.3d 738, 744–45 (5th Cir. 2017), "the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances," *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (Clement, J.) (internal quotations omitted). "*Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* (internal quotations omitted). "[E]ven relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (internal quotations omitted). Thus, the relatively minor injury (pain) that Hinson alleges resulted from being kicked, when examined in the context of a

subdued, handcuffed, and compliant arrestee, may suffice to meet the injury element of an excessive force claim, if objectively unreasonable.

Turning to the second prong, whether the right was clearly established at the time, we are mindful of the obligation "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. Instead, for Hinson to prevail on the second prong of the qualified immunity test, "we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (internal quotations omitted). That said, "a case directly on point" is not required. *Id.* at 372 (quoting *al-Kidd*, 563 U.S. at 741). Rather, "[t]he central concept is 'fair warning.'" *Cooper*, 844 F.3d at 524 (quoting *Morgan*, 659 F.3d at 372). If, given existing law, "every reasonable official" would realize that the conduct at issue constituted excessive force for Fourth Amendment purposes, then the right is clearly established. *al-Kidd*, 563 U.S. at 741 (internal quotation omitted).

Although Martin is correct that Hinson has not pointed us to a directly on-point case of excessive force by way of canine bites in the Fifth Circuit that predates this incident, this is not dispositive. "Lawfulness of force . . . does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel." *Cooper*, 844 F.3d at 525. Although the *Cooper* opinion was not published until almost a year after the events at issue here, it is nonetheless helpful, because the *Cooper* panel had no difficulty finding that an officer had "'fair warning' that subjecting a compliant and non-threatening arrestee to a lengthy dog attack was objectively unreasonable" at least as early as 2013. *Id.* The *Cooper* court was also able to point to a robust consensus of opinion that an unnecessary or

unnecessarily prolonged dog bite was unconstitutional. *Id.* at 525–26 (discussing cases from the Sixth, Ninth, and Eleventh Circuits).

The law was also clearly established before February 2016 that, generally speaking, "once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive." *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015); *see also Ramirez v. Martin*, 716 F.3d 369, 378–79 (5th Cir. 2013) (tasing a suspect after he has ceased resisting and is handcuffed is clearly excessive); *Bush v. Strain*, 513 F.3d 492, 500–02 (5th Cir. 2008) (slamming a handcuffed and non-resisting suspect's head against a car is clearly excessive). This well-established general principle—that harsh force should not be applied to a handcuffed, compliant suspect—is enough to give an officer "fair warning" that ordering a dog to inflict a severe bite wound or kicking a handcuffed and compliant suspect without cause violates the suspect's Fourth Amendment rights.

## IV. Conclusion

Because Hinson has not stated a violation of his Eighth Amendment rights, the district court erred in denying Martin summary judgment on the basis of qualified immunity as to Hinson's Eighth Amendment claim. The district court also erred in denying Martin summary judgment on the basis of qualified immunity as to Hinson's Fourth Amendment excessive force claims to the extent they rely on Martin's conduct in apprehending Hinson, before Hinson was subdued. However, taking Hinson's version of the facts to be true, the district court did not err in finding that a jury could reasonably conclude that ordering Rex to continue biting Hinson after he was subdued, and kicking him after he was handcuffed, constituted excessive force in violation of Hinson's Fourth Amendment rights. We AFFIRM in part, and REVERSE and REMAND in part.